HANNAH M. DRESSER & others, executors, *vs.* HENRY C.
DRESSER & others.

Worcester.    January 15, 1902. — March 7, 1902.

Present: HOLMES, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Will,* Undue influence.

There may be found to have been undue influence invalidating a will, although the
will was prepared, in the absence of the person alleged to have exercised the
undue influence, by the usual counsel of the testator at the counsel's office from
a draft brought there by the testator himself and from oral instructions then
given by the testator and was then and there executed.

On the issue, sent to be tried in the Superior Court, whether a certain testator was
induced to execute the instrument purporting to be his will by the undue in-
fluence of his third wife, it appeared, that the testator died in 1899 when nearly
eighty-one years of age. The instrument was executed in 1895. In 1873 he mar-
ried the wife who survived him. In 1882 he had made a will by which his eldest
son by a former marriage shared equally with his wife and two other children
the residue of his estate, except that an indebtedness of about $14,000 due from
his eldest son was to be applied as a portion of his share. The eldest son and
the wife were named as executors. In the instrument of 1895, the principal
changes were, that the eldest son was given but one dollar and released from
all obligations to his father, that the residuary estate was given to the wife and
the other two children, with a limitation excluding the children of the eldest
son if the legatees should not survive the testator, and that the eldest son was
not named as an executor. The eldest son had lived in the South until 1884
when he returned to his former residence here. The instrument of 1895 was
prepared by the usual counsel of the testator at the counsel's office from a draft
brought there by the testator and from oral instructions there given by the tes-
tator where also the instrument was executed. For many years the attitude of
the testator's wife toward his eldest son had been hostile. She testified, that
the hostility came on gradually, and that there came a time when she determined
that family visits and communications with him should cease. There was evi-
dence tending to show, that the esteem and affection of the testator for his
eldest son continued strong and unchanged and that he was deeply and con-
stantly pained by the attitude of his wife, that the testator against his own
wish declined to visit the son's house or to have the son at his house, and when
in the presence of his wife omitted to recognize his son in the street, although
when without his wife he so recognized him and entered into conversation with
him when they met. There also was evidence tending to show, that the wife
knew the contents of the will of 1882, that she saw the draft from which the

instrument of 1895 was made before the testator took it to his counsel, and that she made to her husband the suggestion which resulted in the dropping of the eldest son as one of the executors. *Held*, that on this evidence, the judge was warranted in submitting the issue to the jury, and the jury were warranted in finding that a domination amounting to undue influence was established over the testator by his wife and was exercised against the interest of his eldest son, and in answering the issue in the affirmative.

ISSUES framed by a justice of this court in a probate appeal and sent to the Superior Court to be tried by a jury.

The issues framed for the jury were as follows :

" First issue. Was the instrument propounded as the last will and testament of Chester A. Dresser, duly executed in accordance with law ?

" Second issue. Is the said instrument the will of said Chester A. Dresser, and did he, at the time of its execution, understand its contents ?

" Third issue. Was the said Chester A. Dresser induced to execute the said instrument through [duress, or] undue influence exercised upon him by Hannah M. Dresser, or any other person ? "

At the trial of the issues in the Superior Court before *Bell*, J., by order of the judge and with the agreement of the contestants, the first two issues were answered in the affirmative, and the third issue was tried, the words "duress or" being stricken from it.

At the close of the evidence, the executors, among other requests, asked the judge to rule that there was no evidence to warrant a verdict for the contestants on the third issue. The judge refused so to rule. On that issue the contestants presented their case to the jury on the question, whether the instrument was procured by the undue influence of Hannah M. Dresser. They did not contend that it was procured by the undue influence of any other person.

The jury answered the third issue in the affirmative; and the executors alleged exceptions, only one of which was argued.

*J. M. Cochran & T. G. Kent*, for the executors.

*H. Parker*, (*H. B. Montague* with him,) for the contestants.

BARKER, J. This case is before the full court upon exceptions taken by the executors at a trial by jury at the bar of the Superior Court of issues as to an instrument purporting to be a will, proceedings for the probate of which are pending in the Supreme

Judicial Court for the county of Worcester. At the trial the only contested issue was whether the testator was induced to execute the instrument through undue influence exercised upon him by his wife, and the verdict upon this issue was in the affirmative. The exceptions taken at the trial were to the admission of certain testimony, and these are not now pressed, and to the omission to give certain instructions in the charge and to the charge so far as it differed from the requests for instructions. At the argument before us the only contention made by the executors was that the judge erred in declining to take the case from the jury upon the contested issue upon the ground that there was no evidence to warrant a verdict for the contestants. Hence we consider only that question.

The testator died on August 31, 1899, when nearly eighty-one years of age. The instrument propounded as his will was executed on July 15, 1895, when he was in his seventy-sixth year. He was a cotton manufacturer and attended to his business up to the day of his death. His only ailment seems to have been a chronic neuralgia. At the time of his death the value of his property as estimated by one of the persons named as executor was $150,000 and as estimated by another person also so named was $175,000, and he seems to have been for many years possessed of a competency. In 1873, having been twice married, he was married to his present widow. At that time he had three children, two sons and a daughter. The woman he then married had one son then nineteen years old.

Before 1882 he had made a will as to the provisions of which the evidence gives little information, except that it contained a public bequest. On January 21, 1882, he made a second will which was in evidence. This will gave his wife the sum of $35,000, the use of his homestead for life, his household furniture and other things of that general nature, and gave to his wife's son in a certain contingency what he considered as an equivalent for the money brought him by his wife, and made his wife and his three children his residuary legatees equally, the issue of any child who might be dead at his decease to take by right of representation, but providing that an indebtedness of some $14,000 due from his eldest son should be applied as a portion of his interest. The eldest son and wife were named as

executors. The principal changes in the disposition of his property by the instrument of July 15, 1895, were that the eldest son was given but $1 and released from all obligations to his father, that the residuary estate was given to the wife and the other son and daughter only, with a limitation under which the children of the eldest son could not have any share in the residue if the residuary legatees should not survive the testator, and that the eldest son was not named as an executor.

The eldest son was married in 1869, and for fifteen years from that time lived in the South, returning to his former residence here in 1884, and dying late in the year 1895, leaving a widow, four sons and one daughter, of whom but one was then of age.

The instrument of July 15, 1895, was prepared for execution by an attorney at law who was the usual counsel of the testator, from a draft brought by him to the attorney and from oral instructions given in consultation with the attorney at his office, and was there executed. There was no claim that the instrument was procured by undue influence on the part of the attorney.

It was practically conceded at the trial that for many years the attitude of the testator's wife towards his eldest son had been hostile. She herself testified that it was disagreeable and that she could not tell whether it existed in 1882, that it came on gradually, and that there came a time when she determined that family visits and communications with him should cease, and that there were a number of causes of which she would rather not speak unless obliged to.

On the other hand there was abundant evidence tending to show that the esteem and affection of the father for this son continued strong and unchanged and that the father was deeply and constantly pained by the attitude of his wife.

Examining the evidence in the light of these circumstances, all of which might have been found by the jury, and which do not seem from the bill of exceptions to have been much disputed at the trial, we find much evidence which would justify a finding that the testator's wife had acquired and exercised over him a domination, particularly in his conduct in respect of his eldest son, which a jury might well find to be undue influence. Without attempting to sum up this evidence it is enough to say that it tended to show that because of this domination of the wife

and of her hostility to the son the father against his own will de-
clined to visit the son's house, to have the son at his own house,
and when in the presence of his own wife he met the son in the
street omitted to recognize him, although the father when with-
out his wife was in the habit of recognizing the son in the street
and of entering into conversation when they met.

The evidence also tended to show that the wife knew the
contents of the will of 1882, that she saw the draft memorandum
from which the instrument of 1895 was drawn before it was
taken to the attorney, and she in substance admitted in her
own testimony that she made to her husband the suggestion
which resulted in the dropping of the eldest son as one of the
executors.

If the jury found as they might a domination amounting to
undue influence established over the testator by his wife and
exercised against the interest of his son in numerous ways, from
the existence of that condition and proof that the wife made
some suggestion which found effect against the son's interest in
the will by depriving him of an executorship, and from the
tenor of the will of 1895 as compared with that of 1882, they
were warranted if they saw fit in finding a verdict in the affirm-
ative upon the issue, and the judge was warranted in sending it
to the jury.

*Exceptions overruled.*