ANSEL C. SMITH & another *vs.* KATHERINE A. SMITH.

Franklin. September 21, 1915. — October 14, 1915.

Present: RUGG, C. J., LORING, CROSBY, PIERCE, & CARROLL, JJ.

*Equity Pleading and Practice,* Report of findings of fact, Decree, Further hearing after reversal of decree. *Fraud. Undue Influence. Trust,* Fiduciary relation. *Evidence,* Presumptions and burden of proof.

In a suit in equity a report of findings of fact made by the trial judge, either under the requirement of R. L. c. 159, § 23, or voluntarily, should not include a decree. The decree should be prepared and made after the findings in accordance with Equity Rule 37. In the present case, where the decree had been made a part of the report, it was treated by this court as being separate from the findings of fact.

In dealing with a report of findings of fact made by the trial judge in a suit in equity, the familiar rule here was applied, that, where the evidence on which the findings were made is not reported, the findings of fact so far as they are not inconsistent with each other must be accepted as true.

In a suit by an aged husband and wife against the widow of the plaintiffs' son to set aside a conveyance and transfer made by the plaintiffs to the defendant of all the plaintiffs' interest in the real and personal property left by the defendant's husband, on the ground that such conveyance and transfer had been procured by fraud and undue influence on the part of the defendant, it appeared that during the lifetime of the plaintiffs' son the two households, consisting of the plaintiffs and of their son and the defendant, his wife, occupied the same house, their relations being those of "confidence and affection," that the defendant after her husband's death continued to live in the same house with the plaintiffs and that her relations with them remained friendly, they having signed their approval of her petition to be appointed the administratrix of her husband's estate. The consideration for the conveyance and transfer was an agreement in writing of the defendant to pay to the plaintiffs and the survivor of them a certain sum of money annually and to "nurse and care for them in sickness and in health during their respective lives." *Held,* that the defendant, when the conveyance and transfer were made, was not, in legal contemplation, in a fiduciary relation toward the plaintiffs, and that accordingly the burden of proof was on the plaintiffs to show fraud or undue influence on the part of the defendant.

Where, upon an appeal from a decree in a suit in equity, it appeared from the

report of the trial judge that the findings had been made on an erroneous theory of law as to the burden of proof, and it could not be determined what the findings of the judge would have been if he had proceeded on the correct rule of law as to the burden of proof, the decree was reversed, and it was ordered that the case should stand for further hearing, with the direction that, if the further hearing was had before the same judge, it might be had in his discretion upon the evidence already heard by him with or without such additional evidence as the parties might desire to present.

RUGG, C. J.   This is a suit in equity brought in the name of Ansel C. Smith and his wife, Sophia J., by their daughter as next friend, against the widow of their deceased son to set aside a conveyance of real estate and transfer of personal property executed by them to her on January 1, 1914.  After a hearing in the Superior Court, a finding of facts was made * in which was incorporated some of the evidence and the decree.

This was irregular.  The finding of facts, whether made voluntarily or under the requirement of R. L. c. 159, § 23, is a well recognized step in equity practice.  *Cohen* v. *Nagle*, 190 Mass. 4. It constitutes the substance of the conclusions made by the trial court from the evidence and is the foundation upon which the decree rests.  The decree is a subsequent step.  It is the final adjudication of the court upon the issues raised.  In some jurisdictions and in some instances in this Commonwealth it may contain a more or less lengthy recital of the facts.  But that is not usual.  Equity Rule 37.  *Mason* v. *Daly*, 117 Mass. 403.  It is not the form of the present record.  The decree will be treated as separate from the findings of fact.

Under the familiar rule, since the evidence is not fully reported, the findings of facts so far as not inconsistent with each other must be accepted as true.

Undisputed facts are that the plaintiffs, aged respectively about ninety-seven and eighty-seven years, had occupied for several years a house with their son and the defendant, his wife, each family living alone.  The father, in May, 1913, had conveyed to his son certain real estate.  The son died intestate and childless in December, 1913.  The father, mother and widow supposed that the latter inherited all the estate of the deceased.  Upon applying for appointment as administratrix, the widow learned that this was not so, because the estate of the deceased above

---

* By *Aiken*, C. J.   The defendant appealed from the decree.

debts (as has been found) amounted to about $17,000 and the interest of the father and mother as his next of kin under the law as to the descent and distribution of intestate estates was worth about $6,000. Thereupon, the widow consulted an attorney, who prepared three documents appropriate in form (1) to convey to the widow the entire interest of the parents in the son's real estate, (2) to transfer their interest in his personal property to the widow, and (3) an agreement by the widow to pay to the parents and the survivor during their respective lives $240 annually, and "to nurse and care for them in sickness and in health during their respective lives." These instruments were executed and delivered. This suit is brought to set them aside on the ground that they were executed by mistake and "through the fraud and undue influence of" the defendant. No facts are found showing any mistake, and the case hinges on fraud and undue influence.

The evidence is not reported. Therefore, the only point presented is whether the facts warranted the decree in the form ordered.

The decree proceeds upon the theory that the defendant occupied a fiduciary relation to the plaintiffs and that the validity of dealings between them relating to property must be decided on that basis. This is apparent from the paragraph immediately preceding the form of decree, viz: "The widow was in a position of trust by reason of her prospective office as administratrix; she was also in a position of confidence because of the regard and affection the two old people had for her as the widow of their son." We construe this as a ruling of law upon the facts found. In this connection certain recitals of the decree are significant. These recitals are as follows: "It not appearing that the transaction was for the manifest and full advantage of the plaintiffs and it not appearing that the transaction was entered into by them, or either of them, with a full comprehension of its nature, extent and effect." These recitals are negative in form and appear to constitute a ruling that the burden of proof was upon the defendant, as one occupying a fiduciary relation to the plaintiffs, to show that the transaction was open and fair and for their benefit, and that the plaintiffs were not bound to make out the averments of their petition as in the ordinary case. They are quite different

from definite recitals to the effect that the transaction was not for the advantage of the plaintiffs and was not entered into by them with an understanding of its nature, extent and effect. Such recitals would indicate a finding of positive facts. The one in the decree merely shows a negative failure to prove these facts. The defendant occupied no trust relation to the plaintiffs. She had not been appointed administratrix of her husband's estate at the time, and hence owed no duty arising out of that relation. The ruling that she was "in a position of trust by reason of her prospective office as administratrix" was not sound in any other sense than that the fact that they had signed her petition for appointment as administratrix showed that she possessed their confidence to the extent that they did not care to oppose her appointment. Although St. 1914, cc. 356, 702, giving the widow, if competent and willing, the right to the appointment as administratrix of her husband's estate, had not then been enacted, she nevertheless was named in R. L. c. 137, § 1, together with next of kin, as entitled to a preference in such appointment. There are no facts found disclosing a dependence by the old folks upon her judgment in any business affairs or property matters. Manifestly the relation of the defendant to the plaintiffs was fiduciary only in its general and popular sense. The facts found are that she had attended the plaintiff Ansel as nurse in 1910, and in the following year had become his son's wife. During her married life occupying the same house with the old folks, the relations of the two households were those of "confidence and affection," and after the death of her husband the widow continued to live in the same house and her relations remained friendly with her husband's parents. Though they appear to have been exceptionally strong and well, she performed for them to the full the attentions which her skill and kindness of heart dictated as appropriate to the infirmities incident to their advanced age. They felt toward her the regard and affection which her intelligent care as the widow of their son naturally kindled.

Fiduciary relationship has been defined as "one in which, if a wrong arise, the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the *cestui que trust.*" *National Bank* v. *Insurance Co.* 104 U. S. 54, 68, quoting *Ex parte Dale & Co.* 11 Ch. D. 772, 778.

It often has been said that where a conveyance is made to one occupying a fiduciary relation, it is presumed to have been executed by reason of that relation and not to have been a transaction as between strangers, and the burden of proof is placed upon the grantee to prove that the transaction was fair and just to the grantor and was not procured through fraud or undue influence.*

Whatever may be the rule as to burden of proof where the strict fiduciary relation exists, such as trustee and *cestui que trust,* guardian and ward, attorney and client, it is the established law of this Commonwealth in proceedings to set aside a conveyance to one who occupies an undefined relation of confidence based upon friendship, respect and affection mounting no higher than is disclosed in the case at bar, that "the burden is upon the plaintiff to prove the allegations of the bill." *Taylor* v. *Buttrick,* 165 Mass. 547, 549. *Falk* v. *Turner,* 101 Mass. 494, 496. *Farnam* v. *Brooks,* 9 Pick. 212, 225. *Mackall* v. *Mackall,* 135 U. S. 167, 171. The same rule prevails as to the execution of wills. The burden of proof is upon the party alleging fraud and undue influence to prove it. Even though the will manifestly is for the benefit of one occupying a relation of trust and confidence based upon these informal but natural considerations, the circumstances may be such as to point strongly to fraud or undue influence. But the burden of proof does not shift. *Hoffman* v. *Hoffman,* 192 Mass. 416. *Davenport* v. *Johnson,* 182 Mass. 269. *Jones* v. *Simpson,* 171 Mass. 474, 476. *Baldwin* v. *Parker,* 99 Mass. 79.

This is a sound rule. The burden of proof in the ordinary case is upon the party who asserts certain facts to prove them. In general no policy of the law is contravened by conveyances or transfers of property between persons whose relations are intimate or such as to indicate a certain degree of mutual reliance. Impulses of affection and gratitude flowing from unaffected good will and grateful service are natural. If humanitarian attentions provoke the exercise of generosity, it is not obnoxious to the

---

* *Dougan* v. *Macpherson,* [1902] A. C. 197, 202, 204. *Cannon* v. *Gilmer,* 135 Ala. 302. *Dowie* v. *Driscoll,* 203 Ill. 480, 489. *Snow* v. *Hazlewood,* 85 C. C. A. 226, 229, 232. *Cole* v. *Getzinger,* 96 Wis. 559. *Hunter* v. *Atkins,* 3 Myl. & K. 113, 134, 140. *Greenfield's Estate,* 14 Penn. St. 489, 505. *Ten Eyck* v. *Whitbeck,* 156 N. Y. 341, 354. *Whiteley* v. *Whiteley,* 120 Mich. 30. *Hatcher* v. *Hatcher,* 139 Mo. 614, 624.

law.  The mere statement of such a case shows no wrong and ought not to put upon the guileless recipient of genuine bounty the burden of proving his innocence from the exercise of dominating masterdom or improper ascendancy.  As was said in *Mackall* v. *Mackall*, 135 U. S. 167, at page 172: "It would be a great reproach to the law if . . . it should deprive age and infirmity of the kindly ministrations of affection, or of the power of rewarding those who bestow them."  Of course, under such circumstances careful scrutiny is required to be certain that real desires free from undue influence of any kind have had their course.  The conditions surrounding the transaction may be such as to afford ground for or even compel the inference of gross and mercenary motives, designing a fraudulent scheme for overcoming the will of those enfeebled by age or disease.  Between these extremes lies a broad field.  There is no hard and fast rule as to the degree of proof which may be required.  But there must be some evidence either direct or inferable from the circumstances before an instrument executed with all the formalities of law can be nullified.

This error of law as to the burden of proof appears upon the record to be of sufficient importance to require a reversal of the decree and the sending of the case back for further hearing.  The findings of fact are not adequate to enable us to order a decree.  It cannot be determined what the finding of the judge who had the advantage of seeing the witnesses would have been if he had proceeded under the rule of law that the burden of proof was upon the plaintiffs.

It is found that the plaintiffs did not appreciate that they were inheriting a portion of their son's personal estate.  But there is no such finding as to the real estate.  In this connection the finding that "by reason of the impairment of the faculties by old age, Ansel did not fully comprehend the nature, extent or effect of the transaction he entered into, or the effect of the papers signed," is significant.  It is impossible for us to determine from this and other findings whether the plaintiffs may not have understood what they were doing so far as real estate was concerned.  Moreover, the use of the word "fully" in this finding is confusing as matter of law in a proceeding like the present.  A person either has or he has not sufficient mental capacity to comprehend a transaction.  There is no middle ground.  If he has such

capacity, then the transaction stands (apart from fraud or undue influence). If he does not have it, then the transaction falls.

If the further hearing is had before the same judge, it may in his discretion be upon the evidence already heard by him, with or without such additional evidence as the parties may desire to present.

*Decree reversed.*

*Case to stand for further hearing.*

*W. A. Davenport,* for the defendant.

*C. N. Stoddard,* (*P. H. Ball* with him,) for the plaintiffs.