SARAH A. PARSONS *vs.* MAME C. PARSONS, executrix.

Hampshire. March 27, 1918. — June 25, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Deed,* Consideration, Validity, Incomplete deed. *Parent and Child. Trust,* Constructive. *Fraud. Equity Pleading and Practice,* Cross bill. *Equity Jurisdiction,* To complete deed by addition of seal.

Where one of several sons, after the death of his father, acts in a confidential and advisory, but not strictly in a fiduciary, relation to his mother, who is the sole beneficiary of his father's will and as such has received property of considerable value, such relationship does not preclude business relations between him and his mother; and, if the mother conveys to such son certain real estate which she

received under his father's will and which the son forthwith improves by extensive building operations, and, after the death of the son, brings a bill in equity in which she alleges that the conveyance was made to the son for her benefit and seeks a reconveyance and accounting, while careful scrutiny is required under such circumstances to make sure that the transaction was fully understood by the mother as to its direct and remote bearings and was entered into by her with appreciation of its immediate effect and ultimate result and that there was no overreaching and that no unfair advantage was taken of her, when these elements are assured, the transaction stands on the same footing as other business transactions.

A master, to whom the suit above described was referred, found that considerations for the conveyance of the property in question, which at the time of the conveyance was worth from $12,000 to $15,000 and upon which the son at once spent $35,000 in improvements, were an agreement by the son with his mother to carry out an expressed wish of his father to erect such buildings upon the land as he forthwith erected, an agreement to continue the support and maintenance of the mother and such money advancements as might be reasonably necessary for her comfort, that the son kept these agreements to the time of his death and that they still were being carried out by his representatives in a satisfactory manner; and that further considerations were the placing by the son of insurance upon his life in the sum of $6,000, of which $3,000 was paid to the mother at his death, and a wish of the mother to promote the interests of this son, in whose family she lived and who provided liberally for her wants and whom she expected would continue to do so, and thereby to secure to herself added comforts for the future. The master stated that he was unable to determine the money value of the considerations for the deed, but he found that they were substantial and valuable. On an appeal by the plaintiff, after an examination of all the findings of the master and of evidence reported by him, it was *held,* that the findings were warranted, and that the deed was supported by an adequate consideration.

Applying to the facts found by the master the principles of law that the deed from the mother to one of her sons, above described, was not *prima facie* void but that the presumption was in favor of its validity, and that, in order to set it aside, the court must be satisfied that it was not the voluntary act of the mother, it was *held* that there was no sound ground for holding that there was fraud as matter of law in the giving of the deed.

In a suit in equity against the executor of a will to have a deed of the plaintiff to the defendant's testator set aside because it was procured by fraud and undue influence, was voluntary and without consideration and was incomplete in that it bore no seal, it is proper for the defendant to file a cross bill against the plaintiff alleging that the deed was supported by an adequate and valuable consideration, was valid, and that the omission of the seal was due to accident; and, upon findings of a master, warranted by the evidence, sustaining such allegations, a decree may be entered directing that the deed be completed by the affixing of a proper seal.

BILL IN EQUITY, filed in the Superior Court on December 29, 1914, and afterwards amended, by the widow and sole beneficiary under the will of Horace K. Parsons, late of Northampton,

against the executrix of the will of Charles O. Parsons, a son of Horace K. Parsons, to set aside certain conveyances made by the plaintiff to her son, Charles O. Parsons, and for an accounting, it being alleged among other things that the "Oregon" deed, described in the opinion, was procured by fraud and undue influence, was voluntary and without consideration, and was incomplete because it bore no seal; also a

CROSS BILL IN EQUITY, filed on March 24, 1917, by the defendant against the plaintiff in the suit above described, seeking to have the plaintiff ordered to affix a seal to a deed described in the opinion.

The suit was referred to a master and his findings, set forth in three reports, were confirmed.

The findings of the master as to the circumstances attending the omission of the wafer seal from the "Oregon" deed, referred to in the opinion, were "that the notary inscribed upon said deed what purports to be a seal, namely — the word 'seal' with a scroll about it; that no seal of substance as is required in this Commonwealth was affixed thereto; that the said Sarah A. Parsons signed the instrument in the presence of the notary and acknowledged the same to be her free act and deed before him, he, the said notary, thereupon affixing his signature thereto in his official capacity; that within a short time thereafter Sarah A. Parsons mailed the deed to her son Charles O. Parsons, addressed to Florence, Massachusetts, together with a letter [which the master quoted] . . . that at the time she executed the deed . . . she, was acquainted with and fully understood its contents, that she delivered the same to Charles O. Parsons for good and valuable consideration and for one which was adequate with the intent to convey to said Charles O. Parsons absolutely the property therein described; that she was not induced so to by false or fraudulent representations of said Charles, that the deed was intended to be complete and the omission of a wafer seal from said instrument was due to accident; . . . "

Other material findings are described in the opinion.

The master also, by agreement of the parties and upon an order of the court, reported certain of the evidence before him. The plaintiff filed objections and exceptions to the reports, which were overruled by *Aiken,* C. J., by whose order a

final decree favorable to the defendant was entered. The plaintiff appealed.

*J. W. Mason,* for the plaintiff.

*J. C. Hammond,* for the defendant.

Rugg, C. J.   This is a suit in equity whereby the plaintiff sought to set aside several transfers of property made by her to her son Charles, now deceased, of whose will the defendant is executrix and sole beneficiary.   Most of the issues originally involved have been settled.   The only matter now argued by the plaintiff relates to the validity of a deed of real estate situated in the village of Florence, a part of the city of Northampton.   This deed was executed by the plaintiff while in Oregon.

The background for the consideration of that question is that the plaintiff is the widow of Horace K. Parsons, who during his life was a general merchant, postmaster, notary public and man of affairs having the respect and confidence of his neighbors in the village.   He died in 1891 leaving a widow and six sons.   The oldest son was married and lived in a building on his father's home place. The other five were at home, of whom Charles was the senior. Royal, the next younger, was of age, and the others were aged respectively fifteen, eleven and nine years.   Charles had been assistant to his father.   He took up the various activities left by his father and carried forward and developed them with energy, progressiveness and success.   The father left all his property by will to his widow.   A part of his estate was the homestead property, upon which was the home whcre the family lived, the postoffice, store and other buildings.   Charles married, brought his wife to the home, and until he died, maintained there in considerable luxury a common household including his own family, his mother, one of his younger brothers, who there fell sick and died after a long illness, and his other younger brothers until they reached maturity and sought homes for themselves.   The mother travelled extensively sometimes with one or more of her younger sons, and the money therefor was furnished largely by Charles.   She always and up to the time of the hearings made her home with Charles, and since his decease with his widow.   The homestead estate was at the corner of Main and Maple Streets.   It had been the cherished idea of the father to build a business block along the Maple Street side of the lot.   In furtherance of that idea Charles

constructed a brick block with two stores at the corner of the streets. This block with the land about the same was conveyed by deed to Charles in 1900. He made improvements in the house in which the family lived. Some years earlier he had taken over all the mercantile business of the father and conducted it in his own name.

It was contended by the plaintiff before the master that she established a trust for her own benefit with Charles as trustee. The master found against her on this issue, and settled their relationship by determining that "Charles O. Parsons received the assets of the mercantile business carried on by Horace K. Parsons during his lifetime, the credits of other property, both real and personal, of Sarah A. Parsons under a mutual agreement, the terms of which were well understood by the parties thereto; namely — that Charles O. Parsons should pay and discharge all obligations of the estate incident to the business so carried on; that he should provide means for the maintenance of the real property of the plaintiff, the support of the household, and assume all pecuniary obligations in reference to the mother to which her husband and his father, Horace K. Parsons, would have been subjected were he living, including her care and maintenance in the Parsons Homestead, both in sickness and in health, and furnishing her with sufficient amount of money from time to time, having regard for her own means, so long as she should live, to enable her to provide for her reasonable additional needs, pleasures and enjoyments. Charles O. Parsons, up to the time of his death, faithfully carried out the obligations to his mother so assumed, and up to said time, she never complained to the contrary or questioned the status or terms of arrangement between them; that such obligations on his part might be fulfilled in the event of his own death, prior to that of his mother, at a later date he caused his life to be insured in the sum of Three Thousand ($3,000) Dollars for her benefit, which amount was paid to her upon his decease."

The particular facts about the deed of the remainder of the homestead estate (outside the corner lot already adverted to) called the "Oregon deed" because executed in that State, are reported by the master as follows: "sometime prior to November 1905, Charles O. Parsons arranged with his mother Sarah A. Parsons to convey for good and valuable consideration and for

one which was adequate the premises later described in the deed above referred to; that about the first of November, 1905, Mrs. Parsons started on a journey to the Pacific Coast, going directly to Portland, Oregon and remaining there until and after March 7, 1906; that pursuant to the understanding between them, sometime in February, 1906, Charles O. Parsons drew and forwarded to Sarah A. Parsons at Portland, the instrument under discussion; that she received and retained the same in her possession for a week or more, that on March 7, 1906, she in company with friends called upon a notary public in Portland, George B. Buell, for the purpose of executing the deed; that the notary was particular and careful in explaining to her the contents of the instrument and its force and effect; . . . That at the time she executed the deed . . . she was acquainted with and fully understood its contents, that she delivered the same to Charles O. Parsons for good and valuable consideration and for one which was adequate with the intent to convey to said Charles O. Parsons absolutely the property therein described, that she was not induced so to do by false or fraudulent representations of said Charles, . . . that she treated the property described in said deed as belonging to the said Charles down to the time of his death, September 19, 1914. . . . The value of the property conveyed to Charles by the 'Oregon' deed at the time of conveyance was from $12,000 to $15,000 and the improvements made by Charles immediately following the delivery of the deed were in excess of $35,000. . . . Charles O. Parsons stood in a confidential and advisory relation to his mother, but I do not find any general scheme on the part of Charles having for its end the acquirement of as much as possible of her property in order to exclude her remaining issue from inheriting from her, nor do I find the confidence she reposed in him to have been abused or betrayed." "After securing the deed of the remaining part of the Homestead from the mother, Charles forthwith began to make many changes and improvements in the property. The old frame buildings on the Maple Street side were removed to other parts of the lot and remodeled into comfortable dwelling houses. They were replaced with a two story brick business block extending along the entire remaining side of the lot abutting Maple Street, the block being connected with the Post Office Block built in 1900, and both structures forming one

continuous block, containing nine stores on the ground floor, and large assembly hall and five tenements on the second floor. Funds for the construction of both blocks were supplied by Charles O. Parsons. The cost thereof was not in evidence, but it is the judgment of the Master, made up from a view, that the combined buildings and changes did not cost less than Thirty-Five Thousand ($35,000) Dollars. . . . The two buildings were not built to conform to the boundary lines as determined in the two deeds above referred to, but independently thereof. That is, the two blocks were constructed without reference to the line dividing the properties conveyed to Charles by said two deeds. Sarah A. Parsons gave no direction in reference to the construction of either of the buildings, contributed nothing from funds in her possession to the cost thereof, neither did she make any inquiry as to how funds for the purpose were provided, or where the required funds came from."

The specific finding of the master as to the consideration for this deed is in these words: "(a) The agreement of the son with his mother to carry out the expressed wish of the husband and father, Horace K. Parsons, to have a block of stores built along the entire Maple Street side of the homestead lot, which agreement he kept and in so doing expended a sum in excess of $35,000. (b) The agreement to continue for the mother so long as she might live her support and maintenance and such money advancements as might be reasonably necessary for her comfort having regard to the income from her remaining property, which agreement he faithfully performed to the time of his death and which is now being carried out by his representatives in a manner satisfactory to Sarah A. Parsons. (c) The negotiation by Charles O. Parsons of insurance on his life in favor of the mother to the extent of $6,000, of which $3,000 upon his death was paid to her. (d) The wish of the mother to promote the interests of her son, in whose family she lived and who provided liberally for her wants and whom she expected would continue so to do, and thereby secure to herself added comforts for the future (e) . . . the money value of the consideration for the deed I am unable to determine in dollars but I find the same to have been substantial and valuable."

No error of law is disclosed in these findings. The relation of Charles to his mother was confidential and advisory. It was not

fiduciary in its strict legal sense. It was not of such nature as to preclude business relations between them. Careful scrutiny is required under these circumstances, to make sure that transactions between the parties are fully understood as to their direct and remote bearings, and are entered into with appreciation of their immediate effect and ultimate result, and that there has been no overreaching and that no unfair advantage has been taken. But when these elements are assured, they stand upon the same footing as other business relations. *Smith* v. *Smith,* 222 Mass. 102, 106, 107. It is not necessary that the consideration be adequate in monetary value. The satisfaction of having executed by her son the cherished design of her husband that a business block be erected upon the homestead lot might none the less contribute a valuable consideration, although it would be of little or no financial value to the plaintiff; and it manifestly imposed a considerable risk, a large expense and much responsibility upon the son Charles to undertake the construction of such a block. There was a direct financial obligation incurred by Charles for the benefit of his mother at about the same time as the delivery of the "Oregon deed," in the procurement of life insurance payable to her in case of his death. It may be inferred that this was a part of the consideration for that deed. It is conceded that she has received $3,000 from this source. The findings of the master fairly construed mean that this was a part of the consideration for the "Oregon deed" and did not relate exclusively to other matters. The renewed and re-enforced agreement on the part of Charles to support the mother and supply such advancements for her comfort as might reasonably be necessary is a circumstance entitled to some weight in this connection. There was also the love and affection which the mother naturally felt for the son, whose successful business habits and methods bore so close a resemblance to those of his father. This naturally kindled the admiration of a discerning mother. It is a factor which ought not to be omitted in weighing the relations of the parties. The reported evidence does not appear to us to conflict with, but on the whole rather to confirm, the facts found and inferences drawn by the master. They cannot be pronounced without adequate support under all the circumstances.

There is nothing in the record which requires a finding that

Charles did not exercise good faith toward his mother in relation to the "Oregon deed." The finding that there was no fraud practiced by the son upon his mother cannot be declared wrong on this record. In the weighing of evidence upon such an issue much depends upon observation of witnesses and their method of testifying, an advantage which the master had and which is denied to us. That circumstance leads an appellate court to be reluctant in overturning a decision by a master unless required by manifest justice. *Jennings* v. *Demmon,* 194 Mass. 108, 111. *Adamson* v. *Gilliland,* 242 U. S. 350, 353. The principle of law governing cases of this kind was stated by a former chief justice of this court in *Towson* v. *Moore,* 173 U. S. 17, at page 24, in these words: "The principles established by these authorities may be summed up as follows: In the case of a child's gift of its property to a parent, the circumstances attending the transaction should be vigilantly and carefully scrutinized by the court, in order to ascertain whether there has been undue influence in procuring it; but it cannot be deemed *prima facie* void; the presumption is in favor of its validity; and, in order to set it aside, the court must be satisfied that it was not the voluntary act of the donor. The same rule as to the burden of proof applies with equal, if not greater force to the case of a gift from a parent to a child, even if the effect of the gift is to confer upon a child, with whom the parent makes his home and is in peculiarly close relations, a larger share of the parent's estate than will be received by other children or grandchildren." To the same effect are *Mackall* v. *Mackall,* 135 U. S. 167, and *Smith* v. *Smith,* 222 Mass. 102.

Applying these principles to the facts here disclosed, there is no sound ground for holding that there was fraud as matter of law. The son was about to expend $35,000 of his own upon land the title to which stood in his mother's name. The reason for this in part was a desire to effectuate a plan of the father, dear to the hearts of his mother and himself. But it was a business adventure. Whether it should be in the end a failure or a success naturally would depend upon numerous elements more or less uncertain in their nature. All the facts were equally well known to both the mother and son. The latter in addition contemporaneously incurred financial obligations for the direct benefit of the mother. It well might have been inferred that the plaintiff, being

fully cognizant of the entire situation and having a considerable measure of commercial sagacity, voluntarily executed the deed with a complete realization of its meaning and effect, having deliberately decided that she was quite willing to take in return the several advantages both pecuniary and sentimental which would accrue to her as a result. There is no reason why she should now be aided by the law to bring about a change of purpose after the understanding has been entirely carried out by the son in apparent reliance upon the conveyance.

The master has found that the omission of the wafer seal from the "Oregon deed" was due to accident. This finding cannot be reversed. It appears from the circumstances of its execution, the reported evidence and the other facts found, to be manifestly sound. It was proper for the defendant to file a cross bill asking for specific affirmative relief to the end that the deed be completed by the addition of such a seal as is required by our law. This matter relates to the same general subject as the main bill. *Richards* v. *Todd*, 127 Mass. 167, 170. *Andrews* v. *Gilman*, 122 Mass. 471, 474. *Forbes* v. *Thorpe*, 209 Mass. 570. *Torrey* v. *Parker*, 220 Mass. 520, 525. It having been found that the conveyance made by the "Oregon deed" was upon a valuable and adequate consideration, and there being no ground for disturbing this finding, there is no reason why that deed should not be completed by the addition of ·a seal. The facts, which have been found, show that this is not a defective attempt to make a gift, but a bargain for a conveyance upon a sufficient consideration, which falls short of accomplishing the result intended by the parties to a valid contract because of an imperfect deed. It is one of the familiar functions of equity to enforce the correction and completion of such an instrument.

*Decree affirmed.*