Argued October 8, reversed November 24, motion to retax costs denied December 8, 1925, motion to recall mandate denied January 19, 1926.

## W. F. GRENZ v. ROSCALIA ANDERS ET AL.

(241 Pac. 46.)

**Quieting Title—Where Correction Deed Exists, not Necessary to Plead Former Deed.**

1. In suit to quiet title, where grantee has a correction deed, it is not necessary to plead in relation to original deed which had the incorrect description.

**Deeds—Defendant has Burden of Proving Claim That Plaintiff's Deed was Procured by Undue Influence.**

2. In suit to quiet title, defendant's claim that plaintiff's deed was procured by undue influence is an affirmative allegation which defendant has burden of proving, under Section 726, Or. L., providing that each party shall prove his own affirmative allegations.

**Deeds—Evidence Held to Show That Plaintiff's Deed was not Procured by Undue Influence.**

3. In suit to quiet title, *held* that evidence failed to show that plaintiff's deed was procured by undue influence over deceased grantor, and fact that plaintiff had an opportunity to influence grantor is not sufficient.

**Deeds—Grantee Held not to Occupy Fiduciary Relationship to Grantor.**

4. Grantee, bearing no relationship to deceased grantor, but known by deceased from birth, with whom deceased grantor lived during her last illness, but who never counseled deceased respecting management of her property, does not occupy a fiduciary relationship to her as respects undue influence.

**Deeds—Independent Advice to Grantor not Necessary, Where No Showing of Confidential Relationship to Grantee or Undue Influence.**

5. Where there was no confidential relationship between grantee and grantor, and no showing that grantee exercised undue influence in procuring deed, it is not necessary that grantor have independent advice to make a transaction valid.

**Property—Owner may Alienate Property as Desired.**

6. Owner of property has right to alienate it as desired, and sisters of owner have no vested interest in property which owner must regard.

---

Deeds, 18 C. J., p. 237, n. 94, p. 240, n. 27 New, p. 424, n. 19, p. 437, n. 46, p. 445, n. 34.
    Evidence, 22 C. J., p. 68, n. 43.
    Property, 32 Cyc., p. 677, n. 96.
    Quieting Title, 32 Cyc., p. 1370, n. 11.

From Marion: GEORGE G. BINGHAM, Judge.

Department 1.

    REVERSED. MOTION TO RETAX COSTS DENIED. MOTION TO RECALL MANDATE DENIED.

---

2. See 5 R. C. L. 673.
4. See 6 R. C. L. 637.
6. See 22 R. C. L. 83.

For appellant there was a brief and oral arguments by *Mr. Grant Corby* and *Mr. Claire M. Inman.*

For respondents there was a brief and oral arguments by *Mr. John Bayne* and *Mr. James G. Heltzel.*

BURNETT, J.—It is stated in the complaint and admitted by the defendants that on April 1, 1921, Amelia Kieschnick was the owner in fee simple of the following described real estate:

"Beginning at a point in the center of the County Road leading from Salem to Buena Vista 4.85 chains east and 8.04 chains north of the corner to sections 18, 19, 13 and 24 in township 9 south, ranges 3 and 4, west of the Willamette meridian in Marion County, Oregon, and running thence north, 68 degrees 30 minutes west, 47.54 chains; thence north, 21 degrees 30 minutes east, 1.87 chains; thence north 69 degrees west, 19.10 chains to the west line of the Donation Land Claim of Peter Polly and wife; thence north, 50 degrees east, 9.91 chains; thence south, 68 degrees 30 minutes east, 15.59 chains to the northwest corner of the William Ascherman land; thence south, 32 degrees 45 minutes west, 6.23 chains to the southwest corner of the William Ascherman land; thence south, 68 degrees 30 minutes east, 49.21 chains to the southeast corner of the Robert Kieschnick land in the center of the Salem and Buena Vista County Road; thence south, 45 degrees west, 4.27 chains to the place of beginning, containing 34.18 acres of land. Also, the right of way and privilege to keep open a certain ditch reserved and described in that certain deed from John Kieschnick and Amelia Kieschnick to Will G. Ziegler and Sallie Ziegler recorded on the 4th day of January, 1904, at page 378 of volume 84 of the Deed Records of Marion County, Oregon, said deed conveying the 35.96 acre tract hereinafter mentioned."

The plaintiff claims that on that date Amelia Kieschnick, now deceased, desiring to convey the land to him, had a deed executed for that purpose which contained a description not applicable to the tract intended to be conveyed, it being the only property of the kind of which she was the owner at the time. He further avers that he is the owner in fee simple and in possession of all of the above described real property; that the defendants, sisters of the decedent, residing in Germany, claim some interest or estate in the property and that August Kehrberger, as executor of the decedent's will, likewise, in that capacity, asserts some interest therein, but that each and all of such claims are groundless and without any validity. The plaintiff therefore prays for a decree quieting his title to the property and enjoining the defendants from asserting any estate or interest therein.

The defendants, other than August Kehrberger, are sisters of the deceased Amelia Kieschnick. Kehrberger is the executor of a document executed by her April 14, 1921, purporting to be her last will and testament. They say that the decedent, about April 1, 1921, executed the deed of conveyance which the plaintiff mentions in his complaint, and that likewise "on or about the 15th day of April, 1921, the plaintiff by and with the assistance of his mother, Mrs. Eva Grenz, and others working in his behalf to that end, procured said Amelia Kieschnick to execute and deliver to him another deed," which deed conveyed the land by a true description, as averred in the complaint. They then set out, according to its tenor, a deed from Amelia Kieschnick to the plaintiff, W. F. Grenz, "for the consideration of the sum of one dol-

lar and other good and valuable considerations,"
conveying to the latter the land by the correct de-
scription contained in the complaint. They aver, in
substance, that she was upwards of seventy-three
years of age, unable to speak or understand the En-
glish language, except slightly; that she used the
German language, was unable to read or write in En-
glish and was compelled to rely upon someone to
interpret the meaning of transactions in that lan-
guage. They state also that at the time she executed
the deeds to the plaintiff she was greatly weakened in
body and mind and was incapable of transacting
business or understanding the purport or effect of
the deeds; that she lived in the country near where
the plaintiff, his brother and his mother resided and
because they spoke German the decedent, "after the
death of her husband in 1919, frequently visited at
the Grenz' home and boarded and in January, 1921,
or thereabout, said Amelia Kieschnick became ill and
stopped entirely in the Grenz home, and during the
aforesaid visits to and staying in the Grenz home,
the said Mrs. Eva Grenz solicited and persuaded the
said Amelia Kieschnick to convey her said land to
members of the Grenz family, and the plaintiff and
his mother, Mrs. Eva Grenz, secured an influence and
control over the will of the said Amelia Kieschnick
whereby they were enabled to direct her to do any-
thing they desired, and that they, acting together in
this behalf, well knowing that said Amelia Kieschnick
was then greatly weakened in body and mind and
entirely incapable of transacting business or to know
or understand the purport of the said deeds, and
knowing their said influence and control over her,
directed and procured her to execute the said deeds
to the plaintiff, contrary to her desire and will when

she was not under the influence and control and directing power aforesaid of the plaintiff and his mother, and the securing of the said deeds by the plaintiff as aforesaid was a fraud upon the said Amelia Kieschnick, and upon these answering defendants herein.''

The defendant Kehrberger formally denies the allegations of the complaint and sets up his appointment as executor of a will executed by the decedent on April 14, 1921. The reply traverses the affirmative matter in the answers of the defendants. The Circuit Court made a decree favorable to the defendants and the plaintiff appealed.

It appears in testimony that the plaintiff is a young man, about twenty-four years of age, whom the decedent and her husband, also deceased, knew from his birth until their death; that they were very fond of him and as he grew up the decedent Amelia Kieschnick frequently alluded to him as her son, although she had never given birth to any children. It is conceded that her four sisters, residing in Germany, are her only heirs. Her husband died in November, 1919, leaving Amelia, his widow, as his only heir. The land in question came to her by descent from her deceased husband, and was the only real estate she owned. In January, 1921, while she was sick at the residence of the plaintiff and his mother, she called to treat her Dr. E. E. Fisher, to whom she stated, according to his testimony, that she wanted to leave her property to the plaintiff. The physician says that her mental condition at that time was about as good as the average individual at her age, and she knew perfectly well what she wanted to do. He testified that at her request for the services of an attorney he asked Elmo S. White, an at-

torney of Salem, to visit her for the purpose of preparing for execution by her any papers she wanted. On his arrival at the Grenz home where the decedent then was, she expressed to the attorney a desire that a deed be drawn in favor of the plaintiff for her land. Mr. White says:

"She referred to Mr. Grenz as 'mine sone,' that is, her son, and I understood that she was not seriously ill and might recover at that time. In my conversation with Dr. Fisher, I understood that she might recover, so it seemed to me that a will would better serve her purpose than a deed and the general conversation I had was relative to whether or not a deed should be drawn or a will, but there was never at any time any question but what she intended the property to pass to Will Grenz."

The result of that conference was the execution of a will whereby the decedent bequeathed a legacy of $300 to her sister, Bertha Nake, and gave the residue of her estate to the plaintiff, subject to the erection of a tombstone at her grave at an expense of $50. According to the testimony of the plaintiff and his mother, which is not disputed by any witnesses, in the latter part of March, 1921, he was working in Jefferson and Mrs. Kieschnick had his mother call him to come to their home, some miles distant. When he arrived the decedent told him that she wanted to deed him the place, against which he protested, but she insisted and by her direction he took a deed, which she furnished, to Jefferson and procured a notary public to draw the deed containing the erroneous description. It seems from the testimony that the deed she furnished was one which her husband had made to her during the lifetime of both of them, the land described in which was subsequently conveyed by them

to other parties. The intention is plain, however, that she proposed to convey the only tract of land she had, it being the one admittedly owned by her and first described in the complaint.

1. As a matter of pleading in a suit to quiet title, it is not apparent why anything should be said about a deed that does not affect the land in controversy or to mention any mistake in such conveyance. True enough, as argued by the defendants, a suit will not ordinarily lie to correct a mistake in a deed of gift. In general, equity will not aid the recipient in "looking a gift horse in the mouth," but that question is academic here. Without dispute the plaintiff has a deed from Amelia Kieschnick, dated April 15, 1921, conveying the land to him by a correct description. On the face of that conveyance, the plaintiff, as against the decedent, her heirs and her personal representative, has a fee simple title to the land involved. The question is reduced to the determination of whether that instrument was procured by undue influence exercised over the decedent in behalf of the plaintiff.

2. Giving to the allegation of the defendants its utmost effect, they declare that the plaintiff and his mother, having secured an influence and control over the will of the decedent, whereby they were enabled to direct her to do anything they desired, "directed and procured her to execute the said deeds to the plaintiff, contrary to her desire and will when she was not under the influence and control and directing power aforesaid of the plaintiff and his mother." This is an affirmative allegation, upon which the defendants rely in order to prevail in this suit wherein they attack the conveyance mentioned. It is said in Section 726, Oregon Laws:

"Each party shall prove his own affirmative allegations."

And it is laid down in *Richardson* v. *Griggs,* 51 Or. 222 (94 Pac. 561):

"It is too well settled to admit of doubt that the moving party in a suit brought to annul or set aside a deed, or to compel a conveyance of realty, has the burden of proof, and must establish the facts sufficient to justify a decree in his favor by clear and explicit evidence."

In *Smith* v. *Smith,* 222 Mass. 102 (109 N. E. 830), the issue was between an aged couple, ninety-seven and eighty-five years old, respectively, on the one hand, and the widow of their son on the other, respecting the validity of conveyances from the old people to the daughter-in-law, wherein the court, speaking through Mr. Chief Justice RUGG, said:

"Whatever may be the rule as to burden of proof where the strict fiduciary relation exists, such as trustee and *cestui que trust,* guardian and ward, attorney and client, it is the established law of this Commonwealth in proceedings to set aside a conveyance to one who occupies an undefined relation of confidence based upon friendship, respect and affection mounting no higher than is disclosed in the case at bar, that 'the burden is upon the plaintiff to prove the allegations of the bill' "; citing many authorities.

3. There is no reason presented in the instant case why we should depart from the expressed rule of the statute already quoted. In the will drawn by Mr. White on January 13, the decedent had made the plaintiff the devisee of all her property, except a legacy of $300 to her sister, Bertha Nake, subject to the erection of the tombstone at an expense of $50. She clearly defined her intentions on April 1, 1921,

to give the land to the plaintiff and evidently thought she had accomplished that purpose by the deed prepared by the notary Howell. The witnesses White, Fisher and Howell all agree that she was capable of understanding what she was about. August Kehrberger, a friend of many years, who was appointed executor of the will of April 14th, testified thus:

"Q. You think she (the grantor) was fit to transact business?

"A. Yes, with right explanation in German, she did.

"Q. During all the time that you knew her from 1920 up until the time she executed this last will (meaning the will of April 14, 1921), what was her condition in that respect as you observed it?

"A. Well, for an old lady, she was in fair condition as far as that is concerned. She knew well enough what she was doing in her own way and so on."

Mr. Heltzel was the attorney who prepared for her the will of April 14th, witnessed by himself and Mrs. Kehrberger. He said:

"At that time she seemed to be in possession of all of her mental faculties, and was not stupid, and was bright and friendly, and understood everything that she was doing."

Immediately after the execution of that will at the residence of Mr. Kehrberger, she went to the Salem Hospital for treatment. The deed containing the correct description was executed by her at that institution the next day after her arrival there. The testimony of Miss Steele, then superintendent of the Salem Hospital, was as follows:

"Q. Did you have any talk or conversation with her regarding any transaction that she had been persuaded to engage in?

"A. Not that evening.

"Q. Later did she tell you anything about any papers that she had been made to draw?

"A. The next morning her mind seemed more clear, and seemed quite worried about some paper that she had signed, and she kept repeating 'that it was wrong,' 'all wrong.'

"Q. Did she say anything to you regarding her intentions about her property, or what she wished to do?

"A. Yes, she wished her boy Willie would have it, and she spoke of him also as her son. * *

"Q. Do you recall what explanation was made to Mrs. Kieschnick, and what the discussion was there with her between myself and her at that time?

"A. Yes, you told her that this was a deed of correction, and that there had been an error in a former deed.

"Q. Do you recall my having the former deed there at that time?

"A. I do. * *

"Q. State what, if anything, she said regarding the first deed.

"A. She said she had already given Willie her land, and that she had already given him the deed.

"Q. What was her mental condition, Miss Steele, at that time, as to whether she was rational or irrational?

"A. I think her mind seemed fairly clear. She seemed to know what she was doing anyway.

"Q. The conversation was carried on how, in German or in English?

"A. Well, it was interpreted by Miss Husman, and sometimes she would answer in broken English and sometimes in German. * *

"Q. You recall her speaking in broken English during the transaction?

"A. I do.

"Q. This conversation that you have related that she spoke of regarding Willie, and regarding the former deed which she had made, and when you say that she said that he had already had the land, that she wanted him to have it, in substance, were those re-

marks which you say she made in English or German?

"A. They were in English."

Respecting the will of April 14, 1921, which is in evidence, it is significant that it does not mention the tract of land involved. She had other property, and the will in substance gave a legacy of $300 to each of her four sisters and a legacy of $600 to the plaintiff, with a residuary clause in general terms giving such residue to her sister, Bertha Nake.

The chronology of the documents involved is as follows:

January 13, 1921, a will, written by Elmo S. White, giving $300 to her sister, Bertha Nake, and the residue of her estate to the plaintiff, subject to the erection of a tombstone at a cost of $50.

April 1, 1921, the first deed, acknowledged before notary Howell, containing the erroneous description.

April 14, 1921, the will witnessed by Heltzel and Mrs. Kehrberger, already mentioned but without direct reference to the land involved.

April 15, 1921, the second deed, acknowledged before the notary Inman, whereby the decedent conveyed to the plaintiff the land involved by a correct description.

There is no evidence whatever in the record that the plaintiff, or anyone acting for him, requested the decedent to convey him the land. The principal part of the testimony for the defendants consists of oral statements said to have been made by the decedent during her lifetime to the effect that she had no confidence in the plaintiff's mother and that the Grenz family had gotten everything she had. Opposed to this are Mrs. Kieschnick's letters written to a relative of hers, in which she speaks in commendatory

terms of the plaintiff's mother, and in condemnatory terms of some of her husband's relatives, who were active in behalf of the defendants in the present litigation. All that is shown on behalf of the defendants is that the plaintiff and his mother had an opportunity to influence the grantor to make the conveyances involved. It is not enough merely to show opportunity to exert undue influence: *Rowe* v. *Freeman,* 89 Or. 428 (172 Pac. 508, 174 Pac. 727); *Sturtevant* v. *Sturtevant,* 92 Or. 269 (178 Pac. 192); *Rice* v. *Rice,* 95 Or. 559 (188 Pac. 181). In *Sawyer* v. *White,* 122 Fed. 223 (58 C. C. A. 587), the plaintiff attacked a deed to the defendant executed by the latter's father, a paralytic eighty-eight years of age. It was averred that the grantor had not sufficient mental capacity to execute the conveyance, that the grantee was the confidential adviser and the manager of the property of the grantor and that she procured the deed by undue influence. The opinion of Judge Sanborn on that point contains this language:

"There is no doubt that he was influenced to do so by his affection for and confidence in his son and by his gratitude to him for his years of devotion and service. But hatred or indifference is not indispensable to the validity of a gift, nor is gratitude or affection for the grantee fatal to it. * * The natural influence of the affection of a parent for a child is neither fraudulent nor illegal. * * Nor is the fact that the grantee or devisee occupies a fiduciary relation to his grantor or testator necessarily fatal to the gift. It is the use of that relation to secure a deed or devise against the free will or desire of the grantor or donor, and not the mere existence of the relation that vitiates a grant. It is true that when an unnatural or unreasonable gift or devise is made—such as one by a ward to his guardian, or by a helpless invalid to his nurse, or by a client to his trusted at-

119 Or.—19

torney—the presumption at once arises that the fiduciary relation was used to overcome the will of the grantor and that the deed or devise is voidable, But when the natural gift of a parent to a loved and trusted child is in question, this presumption is met and overcome by the still stronger presumption that such a gift is the natural and reasonable act of the parent, and that the free will of the donor inspired the grant, uninfluenced by the trust relation."

4. That was a much stronger case against the conveyances than the instant controversy. There is no showing here whatever that the plaintiff, or anyone for him, undertook to influence the decedent in the execution of any of the papers involved. We are left entirely to conjecture respecting the matter. That the grantor was fond of the plaintiff from his babyhood to the time of her death is conceded by all who have spoken on that subject and it is apparent from the several wills which she executed. He appears never to have counseled her respecting the management of her property in any manner and did not, within the meaning of the law, occupy any fiduciary relation to her.

5. The defendants contend that the transaction is void because the grantor did not have the benefit of independent advice. That such advice is not requisite in any situation disclosed by the record in the instant case is settled by *Rowe* v. *Freeman, supra.* The courts of New Jersey formerly took radical ground on that subject as appears in such cases as *Slack* v. *Rees,* 66 N. J. Eq. 447 (59 Atl. 466, 69 L. R. A. 393), and *Post* v. *Hagan,* 71 N. J. Eq. 242 (65 Atl. 1026, 124 Am. St. Rep. 1004), cited by the defendants. The rule of those cases is considerably relaxed in subsequent decisions of the same court, such as *James* v. *Aller,* 68 N. J. Eq. 666 (162 Atl. 427, 111

Am. St. Rep. 654, 6 Ann. Cas. 430, 2 L. R. A. (N. S.) 285), *Groff* v. *Stitzer*, 75 N. J. Eq. 452 (72 Atl. 970), and *Soper* v. *Cisco*, 85 N. J. Eq. 165 (95 Atl. 1016, Ann. Cas. 1918B, 452).

6. Mrs. Kieschnick's property was hers to dispose of as she chose. Disinterested witnesses declared that she understood what she was about at the time. The oral declarations imputed to her come from the mouths of interested witnesses and their effect, if made as stated, is overcome by her written declarations disclosed in her letters to her relative. No one imputes to °her any distrust or enmity for the plaintiff. All that class of testimony relates to the plaintiff's mother. The defendants seem to have proceeded on the theory that as against the grantor they had a vested right in her property, which she had no right to disregard. However natural this supposition may seem to one actuated by selfish interests, it is erroneous. As reported by the witness Howell who took her acknowledgment to the erroneous deed, the aged widow said:

"Yah, yah, my property. I do what I please; nobody's business. I want Will to have it."

This homely statement embodies one of the principal attributes of property, that of alienation. It is yet the law that an owner of an estate has a right to dispose of it according to that owner's own desire.

The conclusion is that the deed of April 15, 1921, from Amelia Kieschnick, the decedent, to the plaintiff, is a valid instrument and operates to invest him with a fee-simple title to the land therein described, and a decree is here entered quieting the plaintiff's title to the same and declaring that neither of the de-

fendants has any right or interest in the same or any part thereof.

Accordingly, the decree of the Circuit Court is reversed.

REVERSED. MOTION TO RETAX COSTS DENIED. MOTION TO RECALL MANDATE DENIED.

McBRIDE, C. J., and RAND and COSHOW, JJ., concur.