BALL *v.* REILLY.

DETROIT & SECURITY TRUST CO. *v.* SAME.

1. Wills—Construction—Intent.
   In construing will, intent of testator should be ascertained from consideration of entire instrument.

2. Same—Estate Conveyed—Estates in Common—Joint Tenancy—Statutes.
   Rule as to ascertaining testator's intent from will in devising real estate to two or more persons is qualified by 3 Comp. Laws 1915, § 11562, providing that such devises shall be construed to create estates in common unless expressly declared to be in joint tenancy.

3. Same—Construction.
   Devise to three daughters with provision that if either married she was to receive $500 and property was to be held by last single daughter forever, was devise of one-third interest to each to be divested on marriage, and last single one should own property, so that, where none of them subsequently married, each owned undivided one-third interest, which, unless disposed of by will, descended to heirs.

On the general rule as to ascertainment of intention of testator in interpretation and construction of will, see annotation in 11 L. R. A. (N. S.) 67, 515; 54 A. L. R. 97.

4. CANCELLATION OF INSTRUMENTS—DEEDS—FRAUD.

In suit for cancellation of deed to nephew and niece, conclusion of court below that there was no fraud and that grantor was of sound mind when deed was executed, *held*, justified by record.

5. EQUITY—ACCOUNTING.

Decree providing that grantee account to grantor's estate for rents collected during lifetime of grantor, who retained life estate, did not provide for accounting of money received from ''miscellaneous sources.''

6. EXECUTORS AND ADMINISTRATORS—EQUITY—ACCOUNTING—PARENT AND CHILD.

That aged aunt turned over rental checks to nephew, who looked after her business, and that he deposited some of them in his account in bank, is insufficient in itself to warrant charging his estate with amount thereof, especially where both are now deceased, and their relationship was intimate, almost that of parent and child.

7. SAME—CONTRACTS.

Decree providing that estates of nephew and niece account to estate of deceased aunt for rentals collected, *held*, not justified, in absence of evidence showing enforceable agreement that rents should be paid to aunt, and especially in view of fact that she had previously quitclaimed to them all her interest in leased property.

Appeals from Wayne; Law (Eugene F.), J., presiding. Submitted October 23, 1930. (Docket Nos. 135, 136, Calendar Nos. 35,156, 35,157.) Decided January 7, 1931.

Bill by Cora Beattie Ball, administratrix of the estate of Margaret Beattie, deceased, and individually against Raymond W. Reilly and others to set aside a deed to realty and for an accounting. Decree for defendants. Plaintiff appeals. Affirmed.

Bill by Detroit & Security Trust Company, guardian of the estate of Martha Beattie, a mentally incompetent person, now prosecuted by Guardian

Trust Company, special administrator of the estate of Martha Beattie, deceased, against Raymond W. Reilly and others to set aside a deed to realty and for an accounting. Money decree for plaintiff. Plaintiff and certain of the defendants appeal. Reversed, and bill dismissed.

*Schmalzriedt, Frye, Granse & Frye* (*Armstrong & Meade,* of counsel for Union Guardian Trust Company), for plaintiff Ball.

*Dykema, Jones & Wheat,* for defendants Reilly and Smith.

*Lucking, Van Auken & Sprague,* for defendants Chope, Good, and Bloom.

*Frank I. Kennedy,* for defendant Union Guardian Trust Company, successor to Union Trust Company.

SHARPE, J. Robert Beattie died, testate, on August 17, 1868, leaving a widow and nine children him surviving. His estate has never been closed. On March 6, 1929, the plaintiff, Cora Beattie Ball, a granddaughter, was appointed administratrix *de bonis non* with the will annexed.

One of the paragraphs of his will, apparently drawn by himself, reads as follows:

"I give to my three daughters, Margt. Beattie, Eliza Beattie & Jane Beattie otherwise Reilley, the brick house & lot on Woodward avenue

"Subject to fulfill all the conditions of the contract I made with Mr. Jas. Mott Williams and if either of them Mary to get five hundred Dollars in cash paid them out of sd. property and be then held by the last single daughter for ever."

The contract with Mr. Williams was executed on July 17, 1865. In it the vendor agreed to convey to

the deceased what is now known as No. 2234 on Woodward avenue in Detroit for $1,300. It is now said to be worth more than $100,000. The daughters above named paid the $500 to Mr. Williams, and he executed a deed to them as devisees of the deceased, containing the following recital:

"This deed is made in pursuance and in perform-ance of a certain contract bearing date July 17th, in the year of our Lord eighteen hundred sixty-five, between said J. Mott Williams and one Robert Beattie now deceased, of whom the parties of the second part are devisees and also in pursuance of the last will and testament of said Robert Beattie now on file and of record in the probate office of Wayne county, Michigan."

### *Ball* v. *Reilly.*

The first question presented in this case is what construction shall be placed on the above language in the will. The plaintiff claims that a joint tenancy with right of survivorship was created, while the defendants insist that, as neither of the daughters thereafter married, the estate created was one of tenancy in common.

The cardinal rule to be employed in the construction of a will is to ascertain the intent of the testator from a consideration of the entire instrument. This rule may be said to be somewhat qualified by the provisions of our statute (3 Comp. Laws 1915, § 11562 [3 Comp. Laws 1929, § 12964]) which reads as follows:

"All grants and devises of lands, made to two or more persons * * * shall be construed to create estates in common, and not in joint tenancy, unless expressly declared to be in joint tenancy."

In *Hoyt* v. *Winstanley*, 221 Mich. 515, 519, it was said:

"Estates in joint tenancy are not favored. Since the enactment of our statutes, all presumptions are against them."

And in *Kemp* v. *Sutton*, 233 Mich. 249, 258:

"But devises of land to two or more persons must be construed to create estates in common unless expressly declared to be in joint tenancy, except as to mortgages, devises or grants in trust, or to executors or to husband and wife."

With these rules of construction in mind, let us examine the provisions of this will and the conditions under which it was made by the testator. He made bequests of other property to his wife and to all of his other children. There was upon the lot in question a combination store and dwelling. These three daughters were then conducting a millinery and dressmaking business in the store, and the family, including the father, mother, a son, and these three, and another daughter, lived in the rooms above. The daughter Jane, a widow, had two children, William and Lizzie Reilly. His will contained the following provision as to them:

"My two grandchildren Wm. & Lizzie Reilley is to be kept by Margt. Eliza & Jane Reilly educated and shared out of their part as liberal as they can afford."

His intention, we think, was apparent. He expected that these three daughters would continue their business in the store, and desired that each should have an undivided one-third interest in the property. But, in the event that either of them married, the business and family relationship would be likely to be thereby severed, and in that event the

one first marrying should receive from the others $500, and the one next marrying should receive from the unmarried one $500, and the unmarried one in that event would own the property. Neither of them subsequently married, and on the death of each of them her undivided one-third interest, unless disposed of by will, descended to her heirs.

This conclusion is somewhat strengthened by a somewhat similar, but plainer, provision in the will reading as follows:

"I give to my wife the brick house, No. 14 on Montcalm street on west half of Lot 44 of Lothrop Subdivision of Park lots During her Natural life and to my two Daughters Nancy Beattie and Martha Beattie at her decease and if either of them mary to get five hundred Dollars in cash paid in one year after the other to have the sd. house & Lot on which it is build for ever."

Jane Beattie Reilly died in May, 1907. Her estate was probated, and her interest in this property passed to her children, William and Lizzie. Eliza died in August, 1907. In 1882 she had executed a will, devising all of her property to her sisters Margaret and Martha. After the death of Jane and Eliza, Margaret rented this property, and she and her sister Martha, who had been living with her, purchased a home on Temple avenue, in Detroit, and went there to live.

On August 10, 1915, Margaret executed a warranty deed to her nephew, William Reilly, and his sister, Lizzie, then married to a man named Chope, of an "equal undivided two-thirds part" of the lot on Woodward avenue, reserving to herself the use and occupation thereof during her lifetime. She at that time owned but a one-half interest therein. The consideration expressed was "one dollar and other

valuable considerations." On October 31, 1921, Martha conveyed by quitclaim deed all her interest in this property to the same grantees and for a like consideration. Margaret passed away in 1927. She was then 97 years of age. Martha died in 1929. Both William Reilly and Lizzie Chope were deceased at the time of the trial of these cases. Raymond W. Reilly is the executor of his estate, and Robert L. Chope of hers, and the property is now in their possession.

Plaintiff seeks to have the first of these two deeds set aside. It is her claim that the relationship of William E. Reilly to these grantors was of such a fiduciary character that the burden is cast upon the executors of both estates to establish their validity. The trial court, while conceding this claim, found that the deeds "were made without any undue influence, coercion or fraud;" that "these women, at the time these deeds were executed, were both of sound mind," and that there was "not a scintilla of testimony but what they were procured in a fair and honest way." He further said:

"We have to revert to the relation of these two sisters to the grantees in the deed. When the will of Robert Beattie was executed on the first day of March, A. D. 1867, he said, 'my two grandchildren, William and Lizzie Reilly is to be kept by Margaret, Eliza and Jane Reilly, educated and share out of their part as liberally as they can afford.' Now, these two children, William Reilly and his sister, Lizzie Chope, were practically brought up by these ladies, and the provision in the will, amounting to a command, was that these sisters should take care of these children, and they did take care of them; they lived with them, as the testimony shows, for a good many years until they were married, and I don't think any fraud can be inferred under the circum-

stances of the case. Fraud is not easily inferred. It has to be proven or shown in some way, and I believe from the testimony that these grantors in these two deeds, Margaret and Martha Beattie, did just as they wanted to do when they made these two deeds."

Consideration of the testimony relating to the preparation and execution of these deeds satisfies us that he reached the right conclusion. See *In re Luders' Estate,* 238 Mich. 87; *Smith* v. *Smith,* 222 Mass. 102 (109 N. E. 830).

He further found that there was proof that William Reilly had collected rentals from this property during the time that Margaret was entitled to the use and occupation thereof under the reservation in her deed, and decreed that an accounting thereof should be had by a circuit court commissioner. Pursuant thereto, such accounting was had by Commissioner Markley, who, after taking the proofs submitted, made report on January 23, 1930. He found that:

"William E. Reilly, in his lifetime, received the following sums of money belonging to Margaret Beattie, during the period from January 1, 1921, to February 28, 1927, to-wit:

"From miscellaneous sources........ $10,346.90
"As rental from the Woodward avenue
  property, directly traceable to his
  account............................. 10,487.50

"Or a total of...................... $20,834.40
"Against this, no credits have been proven by competent evidence, and the foregoing sum is the amount in which the estate of William E. Reilly is indebted to the estate of Margaret Beattie, deceased, by reason of this accounting."

The representatives of the Reilly estate filed exceptions to this report. They insist that the decree did not provide for an accounting of the money received from "miscellaneous sources," and that the proof submitted did not justify the finding of the amount collected by him as rentals. Plaintiff thereupon moved to amend the decree so as to provide for an accounting of the money received by Reilly, which resulted in the finding of money received by him from "miscellaneous sources," and also moved for confirmation of the report as made.

In the meantime, Judge Law of the 31st judicial circuit, who had made the decree, had resigned, and Hon. Fred W. George had been appointed as his successor. The several motions were submitted to him, and he filed an opinion in which he declined to amend the decree as requested. He found that the money received from "miscellaneous sources" was not a proper charge against Reilly under the decree and that the proof submitted to the commissioner did not justify the finding as to the rentals received by him. His findings were by stipulation incorporated into a supplementary decree, and are before us on this appeal.

The motion to amend the decree was, we think, properly denied. Provision for an accounting in this respect was not made in the original decree, nor do we think from the opinion filed by Judge Law that he intended that such an accounting should be had. Without amendment, the commissioner was not empowered to take an accounting as to the money received by Reilly from "miscellaneous sources," and in our opinion the evidence did not warrant the amendment. This item was properly disallowed.

As to the rental charge, Judge George refers at some length to the finding of Judge Law that no fiduciary relation existed between Margaret Beattie and William Reilly. He then says:

"The opinion of Judge Law finds that Margaret Beattie and her cotenants in the Woodward avenue property were charged with the education and support of William E. Reilly and Lizzie A. Chope, who were nephew and niece of Margaret Beattie, by the will of Robert Beattie, under which instrument Margaret Beattie claimed one-half interest in the property. Between 1867 and the date of the death of Margaret Beattie in 1927, William E. Reilly, Lizzie A. Chope, and Margaret Beattie maintained the ordinary relations of parent and child. In view of this relation which existed over such a long and extended period of time without proof of any complaints or quarrels upon the part of or among any of the persons concerned, it should take very clear and convincing proof to sustain the contention of the plaintiff that whenever Margaret Beattie delivered a check to William E. Reilly to be cashed, he retained the entire amount for his own account unless he could produce a receipt showing delivery or expenditure of the amount of such check. Instead of this required clear and convincing proof, the plaintiff has only shown that rental checks throughout the entire period were delivered to Margaret Beattie and were indorsed by her and that thirty-seven (37) out of fifty-two (52) of such checks were later indorsed by William E. Reilly and deposited to his account. But plaintiff has failed to show that William E. Reilly did not deliver the money therefor to Margaret Beattie, or expend the money at her direction or upon her behalf. This omission appears to me to be fatal to plaintiff's contention and particularly so in view of the testimony of the witnesses for the defendant which shows without con-

tradiction that William E. Reilly did deliver to her all of the monies which were not expended for her account and that the living expenses at the home maintained by her were very largely met from the rental and income of the Woodward avenue property.''

We are impressed that he reached the right conclusion. William Reilly, as before stated, passed away before the hearing. That he was looking after his aunt's business, collecting her rents in part, paying the taxes, etc., quite clearly appears. But the fact that checks for rent, payable to her, were turned over to him and deposited in his account in the bank was not sufficient in itself to warrant the court in charging his estate with the amount thereof. It is usually difficult, if not impossible, to take a fair account of the dealings between two parties after both are deceased, and this was particularly so in this case on account of the intimate relationship between them, almost that of parent and child. It follows that the decree in this case is affirmed, with costs to appellees.

### Detroit & Security Trust Co. v. Reilly.

In this case, which was submitted with the foregoing, it appears that the plaintiff, on April 26, 1928, was appointed guardian of the estate of Martha Beattie, at that time found to be mentally incompetent. In the bill filed it seeks to invalidate the deed executed by Martha on October 31, 1921, above referred to. It was denied this relief. This deed was executed under quite similar conditions to those attendant upon the execution of the deed from Margaret, and we affirm the decree in this respect without further discussion.

An accounting by the estates of William E. Reilly and Lizzie A. Chope of moneys received by them, or

either of them, which belonged to Martha Beattie during her lifetime, was also sought. The decree provided for such an accounting, and one was had, and, in the supplementary decree which followed, the executors of the Reilly and Chope estates were each ordered to pay to the plaintiff the sum of $4,050, this being the amount of the rents collected from this property between the death of Margaret in 1927 and the death of Martha in 1929. We find no sufficient evidence to establish an enforceable agreement that these rents should be paid to Martha during this time. She had, as already stated, quit-claimed all her interest in this property to William E. Reilly and Lizzie Chope in 1921. On the death of Margaret, in 1927, the title to this property vested in William E. Reilly and Lizzie Chope and their heirs.

A decree may be here entered dismissing the bill of complaint in this case, with costs to defendants.

BUTZEL, C. J., and WIEST, CLARK, MCDONALD, POTTER, NORTH, and FEAD, JJ., concurred.