EFFIE HOFFMAN, executrix, *vs.* HARRIS HOFFMAN & another.

Suffolk. December 11, 1905. — June 21, 1906.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Will,* Undue influence. *Evidence,* Circumstantial.

A finding that the execution of an instrument purporting to be a will was procured by fraud or undue influence can be sustained on evidence which is wholly circumstantial.

At the trial of an appeal from a decree of the Probate Court allowing a will, the jury found that the testator was of sound and disposing mind and memory, and also found that the alleged will was procured to be made through the fraud or undue influence of the testator's second wife who was named in the instrument as executrix. It appeared that at the time of the marriage the second wife was thirty years of age and the alleged testator seventy-five years of age and unattractive in person, and there was evidence warranting a finding that the marriage on the part of the wife was wholly mercenary. There was evidence that after the marriage the relations between the testator and his children and their families, and his old friends, which formerly had been affectionate and intimate, underwent a great change, and that after the marriage he saw them very little, that before the marriage the testator had declared repeatedly that he would not make a will and that his property should go according to law and

his children should have it, that he promised his first wife in her last sickness that he would see that the children had it, that by the instrument purporting to be his will he left to each of his children the sum of $2,000, increased from $1,000 at the suggestion of his legal adviser, and left all the rest of his estate amounting to upwards of $50,000 to his second wife, that he requested the scrivener in drawing his will to make a memorandum that his wife did not know of the matter, that at the time the instrument was executed he was a feeble old man suffering from a complication of diseases incident to his age and was mentally in a condition to be easily influenced by a designing person. *Held*, that the court could not say that the jury were not warranted in finding that the execution of the instrument was procured by fraud or undue influence on the part of the testator's second wife named as executrix.

MORTON, J.   This is an appeal from a decree of the Probate Court allowing the will of Andrew Hoffman.   The case was tried before the Chief Justice of this court.   Two issues were submitted to the jury : 1.   " Was the testator of sound and disposing mind and memory at the time of the execution of the instrument propounded for probate as his last will ? " and 2 " Was the alleged will procured to be made through the fraud and undue influence of Effie Hoffman ? "   The jury answered both questions in the affirmative.   At the close of the evidence the executrix asked the court to rule that there was no evidence tending to show that the alleged will was procured through the fraud or undue influence of Effie Hoffman.   The court declined so to rule, and the case is here on exceptions by the executrix to the refusal to give the ruling thus requested.   All of the evidence is reported.

We think that the ruling was right.   There was no direct evidence that the will was procured by fraud and undue influence on the part of Mrs. Hoffman; but the jury had all the facts and circumstances before them, and we cannot say as matter of law that the conclusion to which they came was unwarranted.

The executrix was the second wife of the testator.   His first wife died in April, 1899, and he himself died in November, 1903. At the time of the marriage the executrix was thirty years old and he was seventy-five.   She lived in Nova Scotia with her father, where the testator saw her in August, 1899, for an hour in the presence of others for the first and only time, so far as appears, till he met her later in Boston.   A month afterwards she received a letter from him proposing marriage.   There had been no communication between them in the meantime.   She

answered it and afterwards came to Boston. She saw him about three weeks after her arrival, and in December they became engaged and on the twenty-third of that month they were married. His children were neither invited to nor informed of the marriage. There was evidence tending to show that he was unattractive in person and that she made inquiries or was informed about his property, and a jury would be warranted in finding that the marriage was a mercenary one on her part. If her motives were mercenary the exercise of undue influence on her part would be more readily inferred than if they were not. There was testimony tending to show that after his marriage the relations between the testator and his children and their families, and old friends, and his previously declared intentions and views underwent a great change. His son had been in business with him for twenty years, and their relations had been pleasant and harmonious. Without any just cause, as it could have been found, the testator terminated this connection, and left the son to look out for himself and treated him in other ways very differently from what he had before. Before the marriage the grandchildren were on affectionate terms with their grandfather and were in and out of his house and frequently took their meals there. This ceased after the marriage. Calls made by the son's wife were not returned, although the relations between her and the testator continued pleasant.

The intimacy between the testator and an old and intimate friend — a Mr. Ships — gradually waned after the marriage without any cause on Ships' part, and when he spoke to the testator about it, he said that his wife was not well disposed towards Ships' wife, showing or tending to show that she had acquired an influence over him. Before the marriage the testator declared repeatedly that he would not make a will, and that his property should go according to the law and his children should have it. He promised his first wife in her last sickness that he would see that the children had it. After the marriage he made two wills, the only difference between them being that he omitted from the last a legacy of $500 to the church of which he was a member which was contained in the first, and it was only at the suggestion of his legal adviser that he increased from $1,000 each to $2,000 each the legacies to his children. All the rest of the

estate, which amounted to upwards of $50,000, was given to the second wife. And he made of the scrivener the somewhat unusual request, to say the least, that he would make a memorandum, which he did, that his wife did not know of the matter. Though the testatrix testified that she never saw the will or its contents or a copy till after the funeral, she did not testify that she did not know of the making of the will, though it is possible that she meant what she said to include that. Although the jury found that he was of sound mind, they might consistently with that have also found that physically he was, at the time the will was made, a feeble old man suffering from a complication of diseases incident to his age, and that mentally he was in a condition to be easily influenced by a designing person. We do not mean to intimate that there was not evidence contrary to or tending to explain various of the matters to which we have referred. But the question before us is not of the weight of the evidence, but whether it fairly warranted the conclusion to which the jury came.

Mere suspicion, however strong, is not of itself enough to warrant a finding of fraud and undue influence. On the other hand, it is not necessary that there should be direct evidence of fraud and undue influence in order to justify such a finding, though it often happens that such evidence is produced. It is of the nature of fraud and undue influence that they may be exercised in indirect and underhanded ways difficult to be come at, and to be judged of only by their results. The will of a testator may be coerced and fraud committed upon him in various ways, and what would constitute fraud and coercion in one case, might not in another. There is no hard and fast rule. A person may be so situated, so weak and feeble or so dependent on another, for instance, that mere talking to him or pressing a matter upon him would so affect him that, for the sake of quietness, he might do that which he did not want to do, and which, if his health had been better or his will stronger, he would not have done. Such a case would constitute or might be found to constitute coercion as truly as force or duress. *Wingrove* v. *Wingrove*, L. R. 11 P. D. 81. So in relation to fraud, representations or acts which would make no impression or a slight impression on a man of mature years in the full possession of his bodily and

mental faculties might readily affect one who from age and infirmity was less capable of weighing things truly and was more dependent on those about him.

In the present case the testator was advanced in years when the will was executed, and was or might have been found to be in feeble health and in a condition which rendered him an easy prey to one in marital relations with him. The marriage was or might have been found to be a wholly mercenary one on the part of the executrix. Indeed it would seem to be idle to suppose that it could have been otherwise. The making of the will and the disposition of his estate were contrary to the intentions of the testator as repeatedly expressed by him before his marriage. And the manner in which the estate was disposed of was or might have been found to be grossly unreasonable and unjust and in substance and effect wholly regardless of the claims which his children had upon him. These and other things which occurred after the marriage might have been found to be more consistent with the successful accomplishment of a scheme on the part of the wife to so dominate and control him as to lead him to execute a will in her favor contrary to his previously declared intentions and contrary to what he would have done if left to himself, than any other view.

The burden of proof was on the appellants; but, taking all the circumstances into account, we cannot say, as already observed, that the jury were not warranted in coming to the conclusion that the will was procured by fraud and undue influence on the part of the executrix.

*Exceptions overruled.*

*R. M. Morse*, for the appellee.
*F. H. Stewart*, for the appellants.