## MARY RAPOSA *vs.* MARIA DA G. B. OLIVEIRA.

Bristol.   October 22, 1923. — January 2, 1924.

Present: RUGG, C.J., BRALEY, DECOURCY, & PIERCE, JJ.

*Undue Influence.   Will,* Validity.   *Evidence,* Presumptions and burden of proof, Of undue influence.

At the trial of an issue, framed in the Probate Court as to whether an alleged will was procured to be executed by fraud or undue influence of one R and his son and daughter, there was evidence tending to show the following facts: At the time of the making of the will the alleged testator was fifty-five years of age, had been in poor health for some time, was ill and weak and was unable to read or write. For seven years he had entrusted certain evidences of personal property to a woman who attended to his business affairs. His only living relative was a sister, who lived in the Azores, who often wrote to him and to whom he frequently sent money. He more than once had said that he intended to remember his sister in his will. A week before his death he refused to make a will, stating that he had only one sister "and everything belongs to her and everything goes to her." The will did not mention the sister, but gave all his property to R and his son and daughter, and nominated the daughter as executrix. The alleged testator did not know the daughter and had stated that he would trust R quicker than he would R's son. On the occasion of the making of the alleged will, R's son and daughter came to the house with a lawyer and a deputy sheriff. The owner of the house was excluded from the room against his protest. R's son and daughter and the lawyer remained with the alleged testator and later called in the deputy sheriff. After they left, the alleged testator was "pallid, cold and lifeless and died about three hours afterwards." *Held,* that a finding that the will was procured by undue influence of R and of his son and daughter would be warranted.

PETITION, filed in the Probate Court for the county of Bristol on April 22, 1921, seeking to prove an instrument alleged to be the will of Joseph Avila Bettencourt, also known as José A. Betencurte, also known as Joseph d'Avila Bettencourt, also known as José Avila Bettencourt.

The proof of the will was opposed by Maria da Gloria Bettencourt Oliveira. Issues, framed on her motion for trial by a jury and proceedings and evidence at a trial in the Superior Court before *Walsh,* J., are described in the opinion. At the close of the evidence, on motion of the petitioner, the trial judge ordered the jury to answer in the negative the issue,

whether the instrument alleged to be the will of the decedent was " procured to be made by fraud or undue influence of Joseph Raposo, Joseph Rapozo, Jr., and Mary Raposa, or any of them exercised upon " the alleged testator. The respondent alleged exceptions.

The case was submitted on briefs.

*M. Entin*, for the respondent.

*T. F. O'Brien & F. Vera*, for the petitioner.

DeCourcy, J. This is a petition to prove the will of Joseph Avila Bettencourt, late of New Bedford. Three issues for a jury were framed in the Probate Court and sent to the Superior Court for trial. At the first trial, the jury found that the instrument was legally executed, and that the testator was of sound mind at the time; but they disagreed on the issue whether the will was " procured to be made by fraud or undue influence of Joseph Raposo, Joseph Rapozo, Jr. and Mary Raposa, or any of them exercised upon " the said testator. The second trial was confined to this issue. The contestant presented three witnesses and rested. The petitioner thereupon rested, and moved that the trial judge instruct the jury to answer the issue, " No." This motion was allowed subject to the contestant's exception.

On the evidence introduced the jury would be warranted in finding the following facts: The testator was about fifty-five years of age, had been in poor health for some time, and was unable to read or write. He had two bank books; a mortgage; and two notes, one for $1,700 and the other for $350. For seven years he had entrusted these to the custody of one Anna Perry, who attended to his business affairs. His only living relative was a sister, the contestant, Maria Oliveira, who lives in the Azores. She often wrote to him; and he frequently sent money to her. More than once he told people that he intended to remember his sister in his will: and as late as a week before his death, when advised to make a will, he said, " No, because I have only got a sister living, everything belongs to her and everything goes to her."

The will does not mention this sister. It bequeaths all

his property in equal shares to Joseph Rapozo, Jr., Mary Raposa, and their father Joseph Raposo; and nominates Mary Raposa as executrix, with a request that she be exempt from furnishing sureties on her official bond. According to the evidence the testator did not know Mary; he had said he would trust the old man Raposo quicker than he would trust the son; and said Joseph owed him $350, and recently had refused to let him stay at his (Raposo's) house.

The will was executed on April 19, 1921, at the home of one Manuel Da Silva, where the testator was then living. He was ill and weak. At about two o'clock in the afternoon Joseph Raposo called, and said, " Joe, you must say where you have your bank books." Later in the afternoon Mary Raposa, her brother Joseph, a lawyer and one Sylvia, a deputy sheriff came to the Da Silva house. The testator was reclining on a chair in the kitchen. Mary Raposa told Da Silva to leave the room; and he did so under protest. Mary, her brother and the lawyer apparently remained in the kitchen with the testator, and later called in Sylvia. No evidence was offered as to what occurred there. After these people had left, Da Silva and his wife entered the kitchen. The testator said nothing. He was " pallid, cold and lifeless," and died about three hours later.

Undue influence, while sometimes susceptible of proof by direct testimony, may be exercised by indirect and secret ways, which are disclosed only in their result. Its existence must then be gathered from the attendant circumstances, such as the health and mental condition of the testator, and the opportunity and power of the beneficiary to overcome the free will of the donor and substitute his own. As was said in *Neill* v. *Brackett*, 234 Mass. 367, 369, " Undue influence may be inferred from the nature of the testamentary provisions accompanied by questionable conditions, as for example when disproportionate gifts or benefactions to strangers are made under unusual circumstances."

On the evidence presented by the contestant, meager though it was, it could be found that the testator was enfeebled by age and sickness; that he made the will in the presence of two of the beneficiaries and without disinterested

advice; and that the alleged will gave all of his property to comparative strangers, and deprived his only sister, who had a natural claim on his bounty, of all benefit in the estate which he had declared was to go to her. These facts unexplained, and under the suspicious circumstances in which the instrument was executed, would authorize the jury to find that the will was procured by undue influence. The contestant was entitled to go to the jury on this issue. *Woodbury* v. *Woodbury*, 141 Mass. 329. *Dresser* v. *Dresser*, 181 Mass. 93. *Davenport* v. *Johnson*, 182 Mass. 269. *Hoffman* v. *Hoffman*, 192 Mass. 416. *Neill* v. *Brackett, supra; S. C.* 241 Mass. 534.

*Exceptions sustained.*