JOHN LODGE EDDY & another, executors, *vs.* JOHN L. EDDY & others.

Suffolk.    May 17, 1932. — November 29, 1932.

Present: RUGG, C.J., CROSBY, WAIT, FIELD, & DONAHUE, JJ.

*Undue Influence.*

In determining whether a transfer by a woman of advanced years of certain bank accounts to the names of herself and of a nephew on "joint account, payable to either or to the survivor" was procured by undue influence of the nephew, her susceptibility to undue influence, the reasonableness or unreasonableness of such transfer in

the light of existent circumstances, confidential and intimate relations existing between her and the nephew, and apparently unreliable testimony by the nephew in explanation of the creation of the account, all should be given consideration.

A finding by a judge of probate that such transfer was procured by the nephew through undue influence was warranted where it appeared that he admittedly stood in a very close and intimate relationship with his aunt and alone during the six years preceding her death transacted her business affairs; that, when she had become enfeebled by age and a progressive disease almost to the point of total physical incapacity, the proceeds from matured bonds and from successive sales of her property and securities amounting to $19,000 were secretly put in his and her names in such joint accounts with the result that after her death, testate, he made claim to that amount with its accumulations in addition to what, on a basis of equality with her other relatives, he took of her remaining property under the terms of her will; and that she in her lifetime had been possessed by a strong family loyalty and had definitely manifested the desire to divide her property equally among her kin.

PETITION, filed in the Probate Court for the county of Suffolk on May 20, 1931, by the executors of the will of Lydia H. Eddy, late of Boston, for instructions.

In the Probate Court, the petition was heard by *Dolan,* J., a stenographer having been appointed under statutory provisions to take the testimony. Material evidence and findings by the judge are stated in the opinion. By his order, the deposits in question and their accumulations were declared to be assets of the estate. John L. Eddy appealed.

*J. H. Powers,* for John L. Eddy, respondent.

*W. B. Grant,* (*W. M. Morgan* with him,) for George F. Eddy and another.

*C. C. Bucknam,* for Helen F. Wheelwright, & *J. H. Rogers,* for Mary L. Wisham and others, submitted a brief.

DONAHUE, J. John L. Eddy and George B. Hayward, executors of the will of Lydia H. Eddy, who died unmarried on April 14, 1930, at the age of eighty-eight, brought a petition in the Probate Court for the determination of the title to deposits in four savings banks standing in the names of Lydia H. Eddy and her nephew John L. Eddy. All these deposits were on joint account, payable to either or the survivor. All the heirs at law of Miss Eddy, including John L. Eddy, who, as executor, is also one of the peti-

tioners, and the four savings banks are parties respondent. In all there were eight deposits, aggregating $19,000, of moneys belonging to Miss Eddy, made in the four joint accounts, the first deposit having been made on January 20, 1928, and the last on November 7, 1929. The probate judge found that the deposits were procured to be made in that form by undue influence exercised by John L. Eddy and that the amounts so deposited were assets of the estate of Lydia H. Eddy. A decree was entered ordering that the four savings banks pay to the executors the amount of the deposits respectively held by them with the accumulations thereon. From this decree John L. Eddy has appealed to this court. The probate judge heard oral testimony and all the evidence is reported. Therefore this court, on appeal, is required to examine the evidence and decide the case upon its own judgment, but such of the findings of the probate judge as are based on oral testimony cannot here be reversed unless they are plainly wrong or based upon some error of law. *Draper* v. *Draper*, 267 Mass. 528, 531. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 144. *Johnson* v. *O'Lalor*, 279 Mass. 10, 13. As is often the fact in cases of this kind there was no direct evidence of undue influence, but its nature is such that it "may be exercised in indirect and underhanded ways difficult to be come at, and to be judged of only by their results." *Hoffman* v. *Hoffman*, 192 Mass. 416, 419. The question here to be decided is whether the finding of undue influence made by the probate judge is justified by the evidence of the attendant circumstances. *Raposa* v. *Oliveira*, 247 Mass. 188, 190.

1. There was evidence which warranted the finding that Miss Eddy was in a condition and of a temperament to be susceptible to influence exerted by her nephew, the appellant. She had been afflicted with paralysis agitans since 1921, and this affected her more and more as time went on. In January, 1928, when the first deposit on joint account was made, she was about eighty-six years old, very feeble, "quite broken," her head shook constantly; she had very little use of her limbs, had great difficulty in walking and in eating; her whole body was affected by the disease; her

eyes troubled her, newspapers had to be read to her, she could not read fine print. Prior to February, 1928, she had been cared for by a maid who for twenty years had taken all the responsibility for the management of her home and on whom Miss Eddy was very dependent. In February, 1928, her condition was such that she was cared for by a domestic nurse who thereafter lived with her until her death. She never took any responsibility in financial matters. For years she had not looked after her own financial affairs. Those had been managed for her by some one of her several brothers and when the last of them, the appellant's father, died in 1924, the appellant took his place. She was a woman of marked loyalty to her family, she trusted every member of it in everything, she believed what any of them told her. The susceptibility of a person, his "liability . . . to be easily affected by . . . undue influence" (*Shailer* v. *Bumstead*, 99 Mass. 112, 121), is a circumstance which is important in determining whether undue influence has been exercised upon him. *Neill* v. *Brackett*, 234 Mass. 367, 369. *McMann* v. *Murphy*, 259 Mass. 397, 401. On the evidence of Miss Eddy's dependent temperament when well or ill, her marked enfeeblement through age and through disease and her absolute trust in any of her kindred, we cannot say the judge erred if he found that she was susceptible to influence by her nephew the appellant.

2. There was evidence which warranted the finding that the depositing of $19,000 in joint accounts was not under the circumstances a natural disposition by Miss Eddy of such a sum which was a considerable part of her fortune. She needed the income on all her property, including the amount deposited in the joint accounts, to meet her living expenses. The appellant testified that his understanding was that his aunt did not make the deposits in the joint accounts in view of the services that he was rendering her but as a gift. Her social relations with the families of others of her next of kin seem to have been more frequent and more intimate than those with the appellant and his family. Her will as originally made in 1918 and as it read at the time of her death, after providing various personal bequests,

devised and bequeathed the rest and residue of her estate to those who should be her legal heirs at the time of her decease. She executed six codicils making small changes in the various personal bequests, but her will as it had stood for twelve years before her death manifested her continued purpose to distribute the bulk of her property equally among her heirs at law. She was a woman of pronounced family loyalty, to whom her family meant a great deal. She had a deep affection for all her next of kin and an equal affection for each. In addition to the continuing expression in her will of the theory of equality in the distribution of what she should possess at the time of her death she had at different times before and after her health was completely broken, and as late as a year before her death, declared her desire that her heirs at law should share equally in the distribution of her property. In determining whether undue influence had entered causally into the transfer of money or property by will or otherwise, consideration must be given to the reasonableness or unreasonableness of such transfer in the light of existent circumstances. *Barker* v. *Comins*, 110 Mass. 477, 483, 488. *Howe* v. *Howe*, 99 Mass. 88, 90. *Woodbury* v. *Woodbury*, 141 Mass. 329, 334. *Davenport* v. *Johnson*, 182 Mass. 269, 271. *Hoffman* v. *Hoffman*, 192 Mass. 416, 420. *Neill* v. *Brackett*, 234 Mass. 367, 369. *Bacigalupo* v. *Cuneo*, 277 Mass. 474. If here the judge found that the credible evidence afforded no ground of reason for the preferment of the appellant by the creation of the joint accounts, that was a circumstance which he could warrantably consider and give fitting weight.

3. The appellant, who since 1924 alone handled the business affairs of Miss Eddy, had the opportunity to exercise influence upon her. He was a business man; she was unversed in matters financial and unaccustomed to business dealings. No other of the next of kin concerned himself with the manner in which the appellant dealt with her affairs. In 1922 the appellant's father, who was then looking after her financial matters, was in poor health, and at his request the appellant, who had been given access to his aunt's safe deposit box for that purpose, cut the coupons

on his aunt's bonds and deposited the proceeds in her
checking account, reporting in each instance what he did
to his father.  Upon the death of his father in June, 1924,
the appellant at Miss Eddy's request took his place in the
handling of her affairs.  From that time until her death no
one else but the appellant went to her safe deposit box or
had anything to do with her business.  In her will executed
in 1918 she had bequeathed $1,000 to the appellant's father
and by a codicil made in 1920 the amount was increased to
$2,000.  In July, 1924, after his father's death, by a codicil
she gave a legacy of $1,000 to the appellant which by a
later codicil executed in November, 1927, was increased to
$2,000.  By a codicil made in October, 1924, the appellant
was named as one of the executors of the will.  The appel-
lant was at Miss Eddy's home at first two or three times a
month and later on was there more frequently.  He was on
friendly terms with the other heirs at law but never men-
tioned to them or to any one that deposits had been made on
joint account with his aunt.  It did not appear that his aunt
had put upon him any injunction to that effect.  He testi-
fied that he knew he occupied a kind of a trust relation
toward his aunt and that under the circumstances in
handling her moneys he should treat her at arm's length,
but that in the matter of the joint accounts he did not think
she should seek the advice of some disinterested outside
person and did not suggest that she consult with her lawyer
or with her relatives.  The mere opportunity to exercise
undue influence (*Johnson* v. *Loring*, 267 Mass. 310, 312);
and the mere existence of a confidential relationship (*Wood-
bury* v. *Woodbury*, 141 Mass. 329, 332), do not establish
undue influence, but those are circumstances which must
be taken into account with other circumstances in deter-
mining whether such influence has been exercised.  *Daven-
port* v. *Johnson*, 182 Mass. 269.  *Hayes* v. *Moulton*, 194
Mass. 157, 165.  *Peirce* v. *Moison*, 256 Mass. 528, 534.
"When the donor is enfeebled by age or disease, although
not reaching to unsoundness of mind, and the relation
between the parties is fiduciary or intimate, the transaction
ordinarily is subject to careful scrutiny."  *Neill* v. *Brackett,*

234 Mass. 367, 369. *Parsons* v. *Parsons*, 230 Mass. 544, 551. We cannot say that the judge erred if after the requisite scrutiny he gave substantial weight to the intimate and confidential relationship between the appellant and his aunt in connection with the fact of her almost complete dependency upon him in the transaction of financial matters because of her age, infirmities and inexperience.

4. The appellant was the only living person who knew just what was said by his aunt and by himself when in eight instalments the sum of $19,000 was withdrawn from her checking account and placed in the name of both in joint accounts. The judge who heard him testify might have found that his version of what occurred was unreliable and unconvincing. A few instances from his testimony are here referred to. He testified on direct examination that his aunt on the occasion of the first deposit said in substance that the money deposited was to be the money of both from the time the account was opened. On cross-examination he testified that she also said on that occasion that she trusted him not to draw any of the income, and again that he understood the money was to be his for the time being but that she did not want the principal drawn or any of the interest, and again that she said the money was to be his as well as hers but he should not touch it until she was gone, and that her language was: "John, I trust that you will not take this." On direct examination he testified that his aunt said she wanted to open a joint account and that he then explained to her what a joint account was. On cross-examination he said that before he explained what a joint account was she explained it to him and that his reason for explaining was that he did not want to take undue influence of her. On direct examination he testified with positiveness that he had no talk with his aunt about procuring funds with which to open the joint accounts and that none of her securities were sold to obtain funds for that purpose. On cross-examination he admitted that within a very short time before each of the first four of the eight deposits were made he participated in the sale by his aunt of real estate and stocks out of the proceeds of which the funds for making

these deposits were obtained; that the fifth and sixth were made out of the proceeds of bonds which were called; that the seventh deposit must have come out of bonds which matured or were sold or the sale of stocks, and that as to the last deposit of $2,000 he was unable to say whether it was made from the sale of stocks or bonds but that two days before that deposit the amount of $1,859.46 was deposited in his aunt's checking account. He testified that he did not know until after his aunt's death what disposition of her property was made by her will or that she had first bequeathed him $1,000 and later increased it to $2,000. He later testified that it was a fact as stated in the petition that his aunt had told him from time to time that she wanted him to have more property than the rest of the relatives were to receive under her will, that she had spoken in a general way about wanting to make deposits on joint account because she wanted him to get more than the rest of the relatives were getting under the will. Where, as here, there is no direct evidence of the exercise of undue influence but evidence of circumstances tending to indicate it, such circumstances may be explained so that they shall not be given that effect. *Woodbury* v. *Woodbury,* 141 Mass. 329. *Raposa* v. *Oliveira,* 247 Mass. 188, 190. We cannot say that the judge was not warranted in disbelieving the appellant's explanation of the creation of the joint accounts and in holding that the circumstances indicative of undue influence stood as unexplained.

5. The appellant admittedly stood in a very close and intimate relationship with his aunt, and alone during the six years preceding her death transacted her business affairs. When she had become enfeebled by age and a progressive disease almost to the point of total physical incapacity, the proceeds from matured bonds and from successive sales of her property and securities amounting to $19,000 were secretly put in his and her names in joint accounts with the result that he now lays claim to that amount with its accumulations in addition to what, on a basis of equality with her other relatives, he takes of her remaining property under the terms of her will. With the further warranted

finding that Miss Eddy was possessed by a strong family loyalty and had definitely manifested the desire to divide her property equally among her kin we cannot pronounce wrong the finding of the judge that the creation of the joint accounts resulted from undue influence exerted by the appellant.

Costs of this appeal as between solicitor and client may be added to the decree in the discretion of the Probate Court and as thus modified the decree is affirmed.

*So ordered.*