GEORGE H. MIRICK *vs.* HARRY G. PHELPS & others.

Worcester. September 23, 1936. — May 24, 1937.

Present: CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Probate Court*, Jury issues. *Undue Influence.*

The mere fact, that in a previous will there were the same provisions for next of kin as in a later will, did not preclude them from contesting the later will.

Expected evidence justified the granting of a motion for a jury issue as to whether a will was procured to be made by fraud or undue influence exercised upon the testatrix by a "roomer" who helped to take care of her and who would benefit by the will, and by her nurse who would receive no benefit thereunder.

PETITION, filed in the Probate Court for the county of Worcester on August 15, 1935, for proof of the will of M. Edna Cummings, late of Worcester.

A motion to frame issues for trial by jury was heard and allowed by *F. H. Chamberlain*, J. The petitioner appealed.

*C. B. Rugg*, for the petitioner, appellant.

*G. R. Stobbs*, (*L. E. Stockwell* with him,) for the respondents.

FIELD, J. M. Edna Cummings, late of Worcester, died August 2, 1935, leaving as her next of kin two nephews — Harry G. Phelps and Robert E. Phelps — and a niece — Mabel A. Barrett. An instrument dated December 21, 1934, purporting to be her last will, was presented for probate. Its allowance was contested by the next of kin who moved that the probate judge frame issues for trial by jury. The motion was heard on statements by counsel of expected

evidence.  A decree was entered ordering trial by jury of the following issue: "Was the instrument propounded for probate as the last will of said M. Edna Cummings procured to be made in whole or in part by the fraud or undue influence of Harry Solomon and Gertrude Jones or either of them exercised upon the said M. Edna Cummings." The proponent appealed.

The personal estate of the deceased amounted to about $10,000.  She also owned a house worth six or seven thousand dollars.  The alleged will makes bequests of household effects and articles of wearing apparel, gives pecuniary legacies aggregating $8,700 in amount, including a legacy to each of the next of kin and a legacy of $2,000 "to Harry Edwin Solomon, of Worcester, Massachusetts, if he shall survive me, in recognition and payment of his many acts of kindness and services rendered in my behalf," and gives the residue of the estate to said Solomon.  Nothing is given to Gertrude Jones.

The next of kin are not precluded from contesting the allowance of the instrument offered for probate by reason of the fact that it makes the same provisions for them as were made by a purported will dated September 8, 1933. *Dexter* v. *Codman,* 148 Mass. 421, 423.

The principles controlling the granting of issues by a probate judge and the action of this court on appeal have been stated frequently and need not be repeated at length. In brief "the question is whether there appears to be a genuine question of fact supported by evidence of such substantial nature as to afford ground for reasonable expectation of a result favorable to the party requesting the framing of issues."  *Hannon* v. *Gorman,* 296 Mass. 437, 438, and cases cited.  See also *Ware* v. *Morton,* 288 Mass. 107, 109.  By reason of the element of discretion vested in the probate judge his decision will be given the weight to which it is entitled in the light of the whole record. *Briggs* v. *Weston,* 294 Mass. 452, 454.  See *Gifford* v. *Patten,* 265 Mass. 362, 363.

The action of the probate judge in framing the issue was not unwarranted.

On the trial of such an issue the burden of proving fraud or undue influence is on the contestant. *Hogan* v. *Whittemore*, 278 Mass. 573, 578. "Fraud and undue influence in this connection mean whatever destroys free agency and constrains the person whose act is under review to do that which is contrary to his own untrammelled desire." *Neill* v. *Brackett*, 234 Mass. 367, 369, see also page 370. The issue, expressed in terms of "fraud or undue influence," is in an established form (see *Fuller* v. *Sylvia*, 240 Mass. 49, 54–55), which is proper even if the expected evidence relates only to influence exerted through coercion rather than through deception — "fraud" in the stricter sense. *Martin* v. *Martin*, 267 Mass. 157. See *Whitcomb* v. *Whitcomb*, 205 Mass. 310; *Angell* v. *Lighthipe*, 251 Mass. 525, 528; *Wellman* v. *Carter*, 286 Mass. 237, 253; *Briggs* v. *Weston*, 294 Mass. 452, 460. Undue influence need not be proved by direct evidence but may be inferred from attendant circumstances, though there must be more than mere suspicion. *Hoffman* v. *Hoffman*, 192 Mass. 416, 419. *Raposa* v. *Oliveira*, 247 Mass. 188, 190.

According to expected evidence, for some time previous to the execution of the instrument offered for probate the deceased, by reason of her condition of mind and body, was susceptible to influence, and Solomon and Miss Jones had ample opportunity to exercise such influence. On these matters there is little or no controversy. Solomon, who was not a relative of the deceased, lived with her for many years, first as a "roomer" paying board, and later — for more than a year immediately preceding the time of the execution of the instrument, and for some time thereafter — having his room free and devoting himself to the care of the deceased. Miss Jones was a nurse who took care of her. Solomon will benefit under the instrument, if it is allowed. It gives him the same pecuniary legacy as did the instrument of earlier date. But the instrument now offered for probate also makes him residuary legatee instead of certain charities which were given the residue by the earlier instrument, and reduces pecuniary

legacies — principally those given to relatives, other than next of kin, and to connections by marriage — by the aggregate amount of $6,750 to the advantage of the residuary legatee.

The expected evidence does not show deception or coercion of the deceased exercised by Solomon at the time of the execution of the later instrument, and the expected evidence — particularly the anticipated testimony of the lawyer who drew the instrument and of his associate who was present when it was executed — would go far to show that the instrument expresses the "untrammelled desire" of the deceased, and that the changes from the earlier instrument were made by reason of her realization that she had less property to dispose of, and of her wish to provide further for Solomon in return for his services and kindness to her. But, on the other hand, expected evidence tends to show that in the period preceding the execution of the instrument now offered for probate — when the deceased was in a feeble condition of mind and body — Solomon's attention was directed to the amount of her property, he discouraged her from having relations with her next of kin and told her that "her relatives didn't care for her as much as he," and, to a considerable degree, he exercised domination over the deceased. Details need not be stated. Giving proper weight to the decision of the probate judge, we cannot say that the expected evidence does not present a genuine question of fact whether the domination of Solomon over the deceased did not extend to the making of the purported will, by which he would benefit substantially, and amount to undue influence. See *Emery* v. *Emery*, 222 Mass. 439; *Connell* v. *Sokoll*, 247 Mass. 203, 206; *Martin* v. *Martin*, 267 Mass. 157; *Howe* v. *Howe*, 291 Mass. 419. "Any species of coercion, whether physical, mental or moral, which subverts the sound judgment and genuine desire of the individual, is enough to constitute undue influence." *Neill* v. *Brackett*, 234 Mass. 367, 369. *Briggs* v. *Weston*, 294 Mass. 452, particularly relied on by the proponent, is distinguishable. There the expected evidence

did not show domination of the deceased by the persons charged with exercising undue influence prior to the making of the will. See page 460.

Though Miss Jones had opportunity to influence the deceased the expected evidence does not show that she had any motive for availing herself of this opportunity, either hope of pecuniary gain or hostility toward the next of kin or beneficiaries under the earlier instrument. The expected evidence of domination of the deceased by her is slight, but it tends to connect her with the domination of the deceased by Solomon. We cannot say that the decision to include "fraud or undue influence" by her in the issue framed was unwarranted.

*Decree affirmed.*