ABRAHAM VIENS *vs.* WILFRID VIENS & another.

Bristol.    October 24, 1938. — February 16, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Undue Influence. Will, Validity.*

Facts warranted the conclusion that the will of a widow eighty years of age was procured to be made by undue influence of one of her three sons who, contrary to strong moral claims of his brothers for equal treatment in the will, was the principal beneficiary, with whom she lived, of whom she was in fear, and who prevented her talking with his brothers or changing her will.

PETITION, filed in the Probate Court for the county of Bristol on December 24, 1936, for proof of the will of Olesime Viens, late of New Bedford.

The petition was heard by *Hitch*, J.

*J. D. Kenney*, for the petitioner.

*P. Barnet*, for the respondents.

LUMMUS, J. The executor named in and proponent of an instrument purporting to be the will of Olesime Viens, a widow who died December 6, 1936, at the age of eighty-five years and whose only heirs were her three sons Abraham, Wilfrid and Henry, appeals from a decree of the

Probate Court, disallowing the instrument as a will be-
cause "said instrument was not the free and voluntary act
of Olesime Viens but was procured to be made through the
undue influence of Abraham Viens." The instrument,
after providing for masses and giving $1,000 each to Wil-
frid and Henry, gives all the residue of the estate to Abra-
ham and his wife.

No evidence is reported, but upon request under G. L.
(Ter. Ed.) c. 215, § 11, the judge made a finding of material
facts. The decree cannot be affirmed unless the facts stated
show its correctness. *Topor* v. *Topor*, 287 Mass. 473. *Birn-
baum* v. *Pamoukis*, 301 Mass. 559, 561–562. The con-
testants have the burden of proving undue influence. *Bacon*
v. *Bacon*, 181 Mass. 18, 21. *Briggs* v. *Weston*, 294 Mass.
452, 460. *Mirick* v. *Phelps*, 297 Mass. 250, 252.

These in substance are the facts found. The estate con-
sists principally of three different houses and land. All
had been the property of the husband of Olesime Viens.
He had died intestate in 1920. The three sons conveyed
their interests in the property to their mother, upon her
promise that at her death it should be divided among them
equally. Each had contributed to the purchase of the
property while they lived with their father and mother,
Abraham less than the others because he had married early
and moved away. In recent years all three sons occupied
tenements upon the property, Wilfrid and Henry paying
no rent because repeated assurances were given by their
mother to them and to other persons as late as 1932, that
each should have one of the houses as his own. In reli-
ance upon those assurances Wilfrid made repairs and im-
provements. Apparently Abraham too paid no rent, for
after his father's death he undertook the management of
the property, and his mother lived with him. At some
time the mother complained to Wilfrid and Henry about
the conduct of Abraham, who, she said, drank and did
not pay over the rents. She expressed fear that Abraham
would waste his inheritance. He and his wife stopped
working in 1930. The mother was always on good terms
with Wilfrid and Henry.

The instrument was executed on March 3, 1931. For the last four or five years of the mother's life — a period that began not long after the making of the will — Wilfrid and Henry were unable to see her alone, for some member of Abraham's family, in which the mother lived, was always present under instructions from Abraham. For the same period she ceased to visit Henry's tenement, which was in the same house with Abraham's. Henry's wife asked her why, and the mother said that Abraham would not like it and would be angry. On several occasions she told Henry's wife that she was afraid of Abraham. When a neighbor was talking with the mother, and Abraham's wife came near, the mother put her finger to her lips and stopped talking. In 1935 Wilfrid asked his mother whether she had changed her will, and she answered that she had made another will but did not state its contents. He asked her then to change the later will, and she said that she would do so, but Abraham's wife who was present told her not to do anything that she would be sorry for. Three days later she said that she had not changed the will.

The facts found show an aged woman, owning property upon which her three sons had strong moral claims, recognized by her, to equality of succession, living in fear of her son Abraham with whom she made her home for the last sixteen years of her life. He took active steps to prevent his brothers from talking with his mother alone. It could be found that through his wife he took steps to prevent his mother from changing her will. We think that an inference that the instrument was obtained by his undue influence was proper, although the subsidiary facts are not as strong as in many cases. *Neill* v. *Brackett,* 234 Mass. 367. *Raposa* v. *Oliveira,* 247 Mass. 188. *Eddy* v. *Eddy,* 281 Mass. 156. *Mirick* v. *Phelps,* 297 Mass. 250. *Smith* v. *Stratton, ante,* 17. *Old Colony Trust Co.* v. *Yonge, ante,* 49.

*Decree affirmed.*