ELEANOR H. COX & another *vs*. EVELYN F. WALL.

Middlesex.    January 2, 1962. — February 6, 1962.

Present: WILKINS, C.J., SPALDING, WILLIAMS, CUTTER, & KIRK, JJ.

*Will*, Validity. *Undue Influence.*

A finding by the judge in a contested will case that the will, of an elderly
woman, was procured to be made by undue influence exercised on her
by the proponents, two sisters who were nieces of hers and the prin-
cipal beneficiaries under the will, was not plainly wrong on reported
evidence respecting, among other things, the existence of a recent prior
will giving all the testatrix's property to the contestant, a third niece
with whom she had had an affectionate and close relationship; the
testatrix's physical and mental condition during the two months between
her brother's death and her own death; her being during a part of that
period at the house of one of the proponents, where she was helpless
and under their control and wholly dependent on them for care and
where the contested will was executed; statements by the proponents
of their purpose to have the prior will changed; statements by her that
she had been "under pressure" from the proponents to change it and
had been "made" to "change everything"; conduct of the proponents
after her death in removing and examining the contents of her safe; and
disappearance of the prior will.

PETITION, filed in the Probate Court for the county of
Middlesex on October 6, 1959, for proof of the will of
Marion F. Orne, late of Somerville.

The case was heard by *Leggat, J.*

*Joseph G. Crane,* for the petitioners.

*Stanley P. Roketenetz, Jr., (Norman Kerman* with him,)
for the respondent.

KIRK, J.   The petitioners appeal from a decree of the
Probate Court disallowing an instrument offered for pro-
bate as the will of Marion F. Orne, late of Somerville.   The
case was fully heard on the facts by the judge of probate
without having been submitted to a jury.   The judge upon
request made a detailed report of material facts.   He con-
cluded that the instrument offered by the petitioners was
procured by the exercise of undue influence by them over

Cox *v.* Wall.

the deceased and that the deceased lacked testamentary capacity at the time the will was executed. The evidence is reported. With the exception of the autopsy report, death certificate, hospital records and bank books, all of the evidence was given orally. It is voluminous. No question is raised as to the admissibility of any of the evidence.

It is the duty of this court on appeal to examine the evidence and decide the case upon its own judgment, but such of the findings of the judge as are based on oral testimony cannot here be reversed unless they are plainly wrong or based upon some error of law. *Eddy* v. *Eddy,* 281 Mass. 156, 158, and cases cited. The value of the testimony of witnesses depended in great measure upon their appearance and their manner of testifying on the stand. In such a case we must give full recognition to the advantage possessed by the trial judge who saw and heard the witnesses. *Goddard* v. *Dupree,* 322 Mass. 247, 248.

The petitioners have urged upon us the importance of a close and careful scrutiny of the entire record. We have fully performed our duty in that respect. We can now best discharge our responsibility by indicating the salient portions of the judge's findings which, supported by the evidence, or by reasonable inference therefrom, justify his conclusion that the will was procured by the undue influence of its proponents.

Marion F. Orne, the testatrix, was an unmarried retired school teacher who died September 28, 1959, at the age of seventy-six. She was a thin, frail, extremely nervous woman who after August, 1949, suffered from a series of complicated bodily ailments which together with extreme emotional disturbance required three periods of hospitalization in the last two years of her life. She had lived all her life at the same residence in Somerville, the last twenty years or more with her sister Edith who died December 26, 1957, and with her brother Ralph who died July 20, 1959. The testatrix had three nieces, two of whom, Eleanor H. Cox and Doris H. C. Ladd, are the petitioners and the principal legatees under the will offered for probate. Both are

middle aged women who live across the street from each
other in Belmont.   They are sisters.   The third niece is
Evelyn F. Wall, the contestant, a woman in her early thir-
ties who is the daughter of the late Ralph Orne.   She lived
with her father, her aunt Edith and the testatrix at the
latter's home from 1940 to 1948 when upon her marriage
she established her own home.

The deceased's relationship with all three nieces was
friendly and cordial, but her relationship with Evelyn was
the closest in the years immediately prior to her death.   A
very strong bond of affection and attachment had developed
between the two when they lived together and afterwards.
When Evelyn's child was born, the testatrix developed an
attachment for her as well.   Before Ralph's death in July,
1959, the two older nieces visited the testatrix about once
a month.

The judge found that on June 25, 1958, the testatrix
and Ralph properly executed two mutual reciprocal wills
whereby they left all their property to each other and each
appointed the other executor of his will.   Each will pro-
vided that if the principal legatee did not survive the testa-
tor, all the property should go to Evelyn, and that if Evelyn
should not survive the testators all should go to Evelyn's
daughter.   With the exception of the names of the testa-
tors, the wills were identical.   Ralph's will was proved and
allowed September 16, 1959.   Early in July, 1958, the testa-
trix and Ralph showed copies of the wills to Evelyn who
read them, showed her also bank books and deeds to real
estate, gave her the combination to the safe and a key to
the house, and instructed her that upon the death of the
survivor she should remove the contents of the safe and ask
the court to be appointed executor of the estate.

Ralph's death on July 20, 1959, when the testatrix found
him stricken in bed under circumstances similar to those
attending the death of her sister Edith in December, 1957,
resulted in a mental and physical shock to the testatrix and
caused her to be severely distressed and disturbed.   On the
day of Ralph's death, at Mrs. Ladd's invitation she went to

the latter's home and remained there for four days when she returned to her own home. On July 29, 1959, she entered a hospital upon the advice of her physician, rested there until August 5, 1959, when she again returned to her own home and remained there until August 23, 1959. On the latter date, unknown to Evelyn, the two sister-nieces took the testatrix to Mrs. Ladd's home where she was under their control and influence until she entered the hospital on September 13, 1959. While the testatrix was at Mrs. Ladd's home she was in a helpless state and was completely dependent upon the two sisters for food, medicine and care. The disputed will was executed on the night of September 11, 1959, at Mrs. Ladd's home. On that day, the testatrix was weaker and sicker than at any time prior thereto. The will was drawn by Carl Felton, Esquire, who had drawn the reciprocal wills of Ralph and the testatrix in 1958, and had acted as an attesting witness to them. On September 12, 1959, when the testatrix, accompanied by Mrs. Ladd, stopped outside Evelyn's house, she appeared extremely nervous and upset, and in an interval when Mrs. Ladd was not within hearing distance, said to Evelyn, "They made me do something awful. I must see you later." Again, between September 13 and 16, 1959, when they were alone briefly at the hospital the testatrix said, "They made me change everything." "I will have to see you later."

Thereafter, from the time of her operation on September 16 until her death on September 28, 1959, the testatrix was unable to speak coherently.

The judge found that, after Ralph's death in 1959, the petitioners had made statements to the effect that the testatrix's will leaving all to Evelyn was "unfair and ridiculous"; that they "would do everything in their power to have it changed"; that Ralph "had bulldozed" the testatrix into making it; and that they had made other remarks indicating their opposition to and disapproval of their aunt's will of June 25, 1958. He found further that the testatrix had said, after Ralph's death, that she did not want to go to the Belmont house; that the petitioners con-

stantly and persistently bothered and pestered her to change the will; that they insisted on picking her up to go to Belmont; that she was "under pressure" from them to change her will; and that they told her that they were doing everything for her and that Evelyn was not doing anything for her. The judge also found that, because of the undue influence of the petitioners, the testatrix had on August 13, 1959, transferred bank accounts totaling $20,000 from her own name to the names of the testatrix and Eleanor H. Cox, jointly, or to the survivor of them.

Other findings show that, after the testatrix's wake, Evelyn called Mr. Felton about going to her aunt's home to do the things she had been instructed to do after her aunt's death. Felton said a new will had been drawn, and that to "keep everything honest and above-board" Evelyn should wait and all should go to the testatrix's house the following Saturday for the reading of the will. Despite this agreement, Mr. Felton and the two petitioners went to the testatrix's house on the Friday night preceding the arranged Saturday and, as was testified, in darkness aided by flashlight removed and examined the contents of the safe. At the scheduled meeting, the will of June 25, 1958, was not to be found; nor has it since been produced. Mr. Felton at the time professed no memory of such a will. As a witness at the trial, however, he acknowledged that he had drawn it and had acted as a witness to it, but could not account for its whereabouts, although he had in his possession a will drawn by the testatrix in 1939.

In the light of the foregoing, we see no reason to disturb the final conclusion of the judge that the offered will was procured by the undue influence of its proponents. It is not practicable or desirable to prescribe any hard and fast rule as to what constitutes undue influence. *Hoffman* v. *Hoffman,* 192 Mass. 416, 419. *Neill* v. *Brackett,* 234 Mass. 367, 370. See *Mirick* v. *Phelps,* 297 Mass. 250, 253. The divers ways in which undue influence may be exercised and be found sufficient to invalidate a will were discussed at length in the frequently cited case of *Neill* v. *Brackett,* 234

Mass. 367, 369–370. See *Berry* v. *Leonard,* 273 Mass. 409, 410; *Abbott* v. *Noel,* 337 Mass. 133, 139.

The facts found are sufficient to bring the case well within the broad principle discussed in the cases cited. All of them, or many of them in combination, support the conclusion that the will offered for allowance was procured by the undue influence of the petitioners.

In view of the conclusion which we have reached on the question of undue influence, it is unnecessary for us to consider the testamentary capacity of the testatrix or to determine whether, under the specifications filed by the contestant and the action of the judge in relation thereto during the trial, the issue of testamentary capacity was open to consideration. In any event, the finding of want of testamentary capacity is not inconsistent with the finding of undue influence; nor would a reversal of the finding on the former issue require us to disturb the finding on the latter. See *Becker* v. *Becker,* 238 Mass. 362, 366; *Briggs* v. *Weston,* 294 Mass. 452, 460.

*Decree affirmed.*