FRANKLAND W. L. MILES, administrator, *vs.*
IRENE P. CAPLES.

Suffolk.  March 8, 1972. — June 5, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, & HENNESSEY, JJ.

*Undue Influence.  Gift.  Judge.*

The mere fact that a judge of a Probate Court appointed the administrator of a decedent's estate did not disqualify the judge from hearing a petition brought by the administrator to determine title to personal property held by the respondent, the decedent's niece. [111]

A conclusion that undue influence on the part of a niece of a testatrix procured the transfer of the testatrix's assets into their joint names was not warranted by the subsidiary findings of a judge with respect to the transfer of certain corporate stock, accompanied by advice as to joint ownership by the stockbroker to whose office the testatrix was driven by her niece, on the day after the testatrix executed her will, which did not specifically mention the stock and disposed of a considerable amount of other property; nor by the findings with respect to the transfer of certain bank accounts, one of which was transferred when the niece "accompanied" the testatrix to the bank before she was stricken ill, and the others of which were transferred after the testatrix became ill, although she was "disoriented" on the day of one transfer; nor by the findings with respect to the niece's action after the testatrix's death in paying certain sums to and obtaining releases from individuals named in the testatrix's will, which the niece possessed for a year before filing. [111–114] SPIEGEL, J., dissenting.

A conclusion by a judge that there was "no completed gift" by a testatrix to her niece of certain bank accounts which were transferred after the testatrix had executed her will into the joint names of the testatrix and her niece was warranted with respect to accounts transferred after the testatrix became ill by the niece's testimony that such transfers were made so that she could pay the testatrix's medical bills and other expenses and that they were so used [114–115]; the evidence indicated that the judge's conclusion was not plainly wrong with respect to the transfer of a bank account prior to the testatrix's illness [115].

PETITION IN EQUITY filed in the Probate Court for the county of Suffolk on July 23, 1964.

The case was heard by *Wilson, J.*

*John F. Cremens* for the respondent.

*Lenahan O'Connell* for the petitioner.

HENNESSEY, J. In this petition in equity, the administrator with the will annexed of the estate of Bridget A. Curran (the testatrix) seeks to determine title to certain personal property. The petition alleged that certain shares of stock and certain bank accounts were placed in the joint names of the testatrix and her niece, the respondent, upon the express agreement that the respondent would hold the stock and the accounts in trust for the benefit of the testatrix. The judge entered a final decree stating that "no express trust was created . . . [and] there was no completed gift to the Respondent by the [testatrix] of all or any part of said personal property," and ordering the respondent to transfer such property, with interest and dividends, to the petitioner. In his report of material facts, the judge found "a fraudulent pattern and plan whereby the Respondent, exercising undue influence on . . . [the testatrix] . . . successfully procured transfer of substantial personal property, constituting all of the assets of the . . . [testatrix], into the joint names of the . . . [testatrix] and the Respondent."

On this appeal the respondent argues that the judge's final decree and several of his subsidiary findings were not warranted by the evidence and that the judge was wrong in failing to disqualify himself from hearing the matter. Since we have before us a report of material

facts and a transcript of the evidence, all questions of law, fact and discretion are open for our decision. We can find facts not expressly found by the judge and, if convinced that he was plainly wrong, we can find facts contrary to his findings. *Lowell Bar Assn.* v. *Loeb*, 315 Mass. 176, 178, and cases cited.

We state the facts. The testatrix, a single woman, died on March 31, 1960, at the age of seventy-five. She had lived alone in the Brighton section of Boston. The respondent was one of the testatrix's seven nieces and nephews living at her death.

On March 31, 1959, the testatrix executed her will at an attorney's office. The instrument provided for four money legacies of $1,000 each to a sister-in-law, two cousins, and a priest, and bequeathed five coöperative bank shares to a nephew and a cemetery lot to another nephew. Finally, the will contained a residuary clause providing for equal division of the residue among six nieces and nephews, including the respondent, who was named executrix.

The attorney who prepared the will was also one of the attesting witnesses. He testified that the testatrix was mentally alert and well oriented, that she understood what she was doing and knew the value and substance of her property. The attorney testified that during a preliminary conference with the testatrix, and on the day that the will was executed, no relatives or other interested persons were present.

On April 1, 1959, the day after the will was executed, the respondent and her husband drove the testatrix to Estabrook & Co., Inc., a Boston stock brokerage firm. At that time, the testatrix transferred ownership of certain stock worth $21,690.50 from her name into the joint names of herself and the respondent. On April 15, 1959, the respondent and the testatrix went to the Cambridgeport Savings Bank, where the testatrix transferred an account containing approximately $4,226.77, and held in her sole name, into the joint names of herself and the respondent. The respondent testified that

this transfer was a gift to her, that she closed the account on July 14, 1959, when it contained $4,261.11 and that she deposited the money in another joint account at the Brighton Five Cents Savings Bank (Brighton account) which will be referred to below.

On May 3, 1959, the testatrix was admitted to St. Elizabeth's Hospital after suffering a cerebral artery thrombosis. Her admission record noted that she was "[o]riented in place & situation but not time." She remained there until June 26, 1959, when she was transferred to a nursing home. The hospital records indicate that on at least eighteen days of her hospitalization she was "disoriented." She died at the nursing home on March 31, 1960.

The remaining transfers of the testatrix's bank accounts occurred while she was confined to the hospital and the nursing home. On May 12, 1959, she signed the papers necessary to transfer the Brighton account into the joint names of herself and the respondent. The transfer was effectuated by the respondent at a time when there was $8,180.08 in the account. On January 6, 1960, the testatrix signed the necessary papers to close an account containing $853.96 at the Institution for Savings in Roxbury. The respondent closed the account and deposited the amount in the Brighton account.

The testatrix also owned a savings certificate in the Forest Hills Coöperative Bank. The evidence was disputed as to when she signed and gave this certificate to the respondent. The latter testified that in the fall of 1958 the testatrix signed the certificate in blank and gave it to her as a gift. The judge, however, disbelieved this testimony and found that in February, 1960, the testatrix signed the certificate and gave it to the respondent who deposited the proceeds in the Brighton savings account. As of February 5, 1960, there was $20,553.52 on deposit in the Brighton account.

On June 23, 1961, a petition for administration of the testatrix's estate was filed by her sister. On August 10, 1961, the respondent filed the testatrix's will in the

registry of probate. According to the testimony of the respondent, she found the will in a trunk belonging to the testatrix sometime during the summer of 1960 and, on the advice of counsel, did not file it until August, 1961. She also testified that the testatrix had on several occasions told her that she had destroyed the will. Although other witnesses corroborated this testimony, the judge found that the respondent "fraudulently continued secret possession of her aunt's will" until it was filed in the registry. A petition for probate of the will was filed by the respondent on September 27, 1963, and allowed on March 25, 1964, at which time the petitioner was appointed administrator with the will annexed.

Finally, the judge found that from May, 1960, to February, 1967, the respondent gave sums of money to and obtained releases from seven individuals named in the testatrix's will. Five of the seven releases were obtained after the commencement of this litigation. The judge found that this action constituted "consciousness of guilt" on the part of the respondent.

1. At the outset we dispose of the respondent's argument that the judge was wrong in not disqualifying himself from the trial of this case. There is no validity to her argument that, solely by reason of the fact that the judge appointed the petitioner as administrator of the testatrix's estate, he was precluded from hearing the case. Further, with respect to the alleged unsworn prejudicial statement received by the judge approximately nine months prior to the trial, we observe that the judge was most emphatic in stating that he had no recollection of the alleged statement.[1] The judge was correct in refusing to disqualify himself.

2. The respondent also argues that the judge's general finding of undue influence was not warranted by his subsidiary findings. We agree with this aspect of the respondent's argument. Nevertheless, for the reasons

---

[1] The allegation by the respondent was that an interested party, perhaps under the influence of alcohol, interrupted proceedings in open court and made statements derogatory to the respondent's interests.

stated in part 3 of this opinion, we hold that as to all of the personal property, except the stock transferred on April 1, 1959, the judge's final decree was correct.

In *Neill* v. *Brackett*, 234 Mass. 367, 370, this court set out the elements necessary to prove undue influence: "(1) a person who can be influenced, (2) the fact of deception practised or improper influence exerted, [and] (3) submission to the overmastering effect of such unlawful conduct." See *Abbott* v. *Noel*, 337 Mass. 133, 139; *O'Brien* v. *Wellesley College*, 346 Mass. 162, 171; *New England Merchants Natl. Bank* v. *Mahoney*, 356 Mass. 654, 657. The burden of proving undue influence rests upon the petitioner in this case. *Viens* v. *Viens*, 302 Mass. 366, 367. *Tarricone* v. *Cummings*, 340 Mass. 758, 762. In many instances a finding of undue influence rests largely on circumstantial evidence, since direct evidence of such influence is often difficult to establish. *Eddy* v. *Eddy*, 281 Mass. 156, 158. Nevertheless, "there must be a solid foundation of established facts upon which to rest an inference of its existence." *Neill* v. *Brackett*, 234 Mass. at 370. On the facts as found by the judge in this case, no inference of undue influence can permissibly arise.

The testatrix transferred the stock valued at $21,690.50 into the joint names of herself and the respondent prior to her being stricken ill. The previous day she had executed her will and, according to the attorney's testimony, was alert, intelligent and well oriented at that time. No evidence suggested that her condition was not the same on the following day. Also, the execution of her will was not inconsistent with her actions regarding the stocks since the will made no specific mention of them and she had a considerable amount of other property which could satisfy the general cash bequests. Further, we observe that although the judge purported to exclude testimony from the stockbroker who executed the transfer that it was his usual custom to advise clients of the effect of joint ownership, the testimony was in fact received by the judge and, in our view, supports an in-

ference that the testatrix herself was so advised. On this evidence, the petitioner has not sustained the burden of proving undue influence with respect to the transfer of the stock. No evidence appears in the record that at the time the stock was transferred the testatrix was susceptible to influence or that in making the transfer her will was overpowered by anything done by the respondent. The facts that the respondent and her husband drove the testatrix to the stockbroker's office, and that the transfer occurred the day after she executed her will, are of no real significance.

With respect to the transfers of the bank accounts into the joint names of the testatrix and the respondent, we also conclude that the evidence and the subsidiary findings of the judge do not support an inference of undue influence. The transfer of the account in the Cambridgeport Savings Bank was made prior to the testatrix's illness. The judge found that the respondent simply "accompanied" the testatrix to the bank to effectuate this transfer. There was no evidence to support a finding as to this transfer that the testatrix was capable of being influenced or that she was in fact unduly influenced to make the transfer.

As to the transfers which occurred after the testatrix was stricken ill, the judge found, and the evidence supports his finding, that she was "disoriented" on several days including the day on which the transfer of the Brighton account was made. However, that fact alone is not enough. It "may suggest that the decedent was susceptible to influence but . . . [it] show[s] neither 'the fact of . . . improper influence exerted' nor 'submission to the overmastering effect of such unlawful conduct.' " *O'Brien* v. *Wellesley College*, 346 Mass. 162, 172. The equivocal actions of the respondent after the testatrix's death and upon which the judge placed great emphasis do not establish "a solid foundation of established facts upon which to rest an inference of undue influence." *O'Brien* v. *Wellesley College*, 346 Mass. at 172. Cf. *Eddy* v. *Eddy*, 281 Mass. 156.

Although the judge found that certain conduct of the respondent after the death of the testatrix showed "consciousness of guilt," this, standing alone, is not sufficient to satisfy the petitioner's burden of proof. See *Commonwealth* v. *Fancy*, 349 Mass. 196, 201.

3. Notwithstanding the fact that the judge was not warranted in finding undue influence, we conclude that his final decree ruling that there was no completed gift to the respondent was warranted with respect to the bank accounts. We reach this conclusion upon our own review of the evidence, giving due weight to the judge's determination of the witnesses' credibility. *Barnum* v. *Fay*, 320 Mass. 177, 180.

It is settled that a change in the form of deposit to the joint account of the former owner and another "would operate as a present and complete gift in joint ownership if . . . [the testatrix] clearly intended such a result." *Coolidge* v. *Brown*, 286 Mass. 504, 507. However, "while the contract of deposit is conclusive as between the parties and the bank . . . nevertheless, as between the survivor and the representative of the estate of the deceased, it is still open to the latter to show by attendant facts and circumstances that the deceased did not intend to make a present completed gift of a joint interest in the account." *Ball* v. *Forbes*, 314 Mass. 200, 203–204. For example, it can be shown that the joint account "was created only as a matter of convenience and did not constitute . . . a completed gift." *Burns* v. *Paquin*, 345 Mass. 329, 331.

According to the respondent's own testimony, the transfers which occurred after the testatrix was hospitalized were made so that the respondent could pay the testatrix's medical bills and other expenses. She testified that she did in fact use those funds for the care and support of the testatrix. On this evidence alone, we believe that the transfers in question were made for the sole convenience of the testatrix. This result is further buttressed by the fact that to hold otherwise would completely nullify the provisions of her

will which was carefully drawn and contained a number of general cash bequests.

4. With respect to the account which was transferred prior to the testatrix's illness (Cambridgeport Savings Bank), we observe that the judge disbelieved the respondent's testimony that it was a gift. Our review of the evidence indicates that he was not plainly wrong. Accordingly, the money in that account which the evidence indicates was deposited in the Brighton account belongs to the testatrix's estate.

After the death of the testatrix, the respondent, on July 5, 1960, withdrew $19,194.04 from the joint account in the Brighton Savings Bank and deposited that amount in the respondent's name in a Dedham bank. On August 3, 1960, the respondent closed out the joint account in the Brighton bank by withdrawal of the remaining balance of $128.22. The evidence shows that all other withdrawals by the respondent from the Brighton account were for the purpose of paying the bills of the testatrix.

5. The final decree is reversed. A new final decree is to enter declaring that the personal property consisting of the corporate stock belongs to the respondent, that all other cash and personal property belongs to the estate of the testatrix, and that the respondent is indebted to the estate in the amount of $19,194.04 with interest on that sum from July 5, 1960 to the date of the final decree, and is further indebted to the estate in the amount of $128.22 with interest on that sum from August 3, 1960, to the date of the final decree.

*So ordered.*

SPIEGEL, J. (dissenting). I am unable to agree with the majority that the "judge was not warranted in finding undue influence." "As is often the fact in cases of this kind there was no direct evidence of undue influence, but its nature is such that it 'may be exercised in indirect and underhanded ways difficult to be come at,

and to be judged of only by their results.' *Hoffman* v. *Hoffman*, 192 Mass. 416, 419." *Eddy* v. *Eddy*, 281 Mass. 156, 158. The question here to be decided is whether the finding of undue influence made by the probate judge was justified by the evidence of the attendant circumstances. See *Raposa* v. *Oliveira*, 247 Mass. 188, 190.

There is no need to recite the evidence in detail. I think it sufficient to state the following: On March 31, 1959, the testatrix executed a will designating the respondent as a one-sixth residuary legatee. Within twenty-four hours, the respondent and her husband drove the testatrix to a stock brokerage firm where she transferred stock representing what appears to be approximately one-half the value of her estate into joint ownership with the respondent. During the next several months the testatrix proceeded to effect the transfer of almost the entire remainder of her estate, composed of various bank accounts and a bank savings certificate into a joint bank account with the respondent, thereby completely negating the will. Finally, the evidence of consciousness of guilt on the part of the respondent following the death of the testatrix was substantial, namely: her continued secret possession of the will; her buying of written releases from persons named in the will; and her prompt transfer of the bank account and stock into joint accounts with her husband.

"The value of the testimony of the witnesses . . . [depends] in great measure upon their appearance and their manner of testifying on the stand. . . . [W]e . . . [should] give full recognition to the advantage possessed by the trial judge, who saw and heard the witnesses." *Goddard* v. *Dupree*, 322 Mass. 247, 248. I think it worthwhile to note that the judge, in at least one instance, considered the testimony of the respondent to be an "absolute falsehood." [1]

I am satisfied that the judge's findings, supported by

---

[1] The respondent had testified that the testatrix had given her stock in joint tenancy prior to the date of the will.

the evidence or the reasonable inference therefrom, justify his conclusion that the respondent exercised undue influence over the testatrix. *Cox* v. *Wall,* 343 Mass. 542, 543. I am not inclined to "second guess" his judgment and therefore would affirm the decree.